· SUTLIFF, C.J., and PECK, GHOLSON and SCOTT, JJ., concurred.

— · — ♦♦♦ — · —

## RICHARD HOPPLE *v.* THE TRUSTEES OF BROWN TOWNSHIP, IN DELAWARE COUNTY.

The act of March 21, 1850 (48 O. L. 294), incorporating the Springfield and Mansfield Railroad Company, empowers the county commissioners of any county through which the railroad might be located, to subscribe to the capital stock of the company any sum not exceeding $50,000, if authorized to do so by a majority of the electors of the county voting at the annual election held next after the publication of at least twenty days' notice.

The act further provides that, if the county commissioners should not be so authorized to make such subscription, then the trustees of any township through which the road might be located may subscribe to said stock any sum not exceeding $50,000, if authorized so to do by like vote of the electors of the township at the like annual election, and to provide for the payment of the subscription in the same manner that the county commissioners are authorized to do (viz: by the issuance of township bonds).

The act further provides that the total amount which may be subscribed by any county and the townships therein, on the line of the road, shall not exceed $100,000.

The act of March 25, 1851 (49 O. L. 548), authorizes the vote, by county or township, to be taken at a special election, called on twenty days' notice; and further provides that if the county commissioners shall not be authorized by the vote to make the subscription for the county, then the question of subscription may be submitted to the electors at the special township election.

The railroad was located through Delaware county and Brown township therein.

On June 17, 1851, the electors of Delaware county, at a special election then held, voted in favor of a subscription of $50,000 by the county commissioners, and on the 4th of August, 1851, the subscription was made, and bonds of the county were issued to pay it.

On July 17, 1851, the electors of Brown township, at a special election then held, decided against any township subscription.

On the 30th of August, 1851, the electors of the township held another special election, which resulted in favor of the township subscribing $17,000 to the stock of the company.

The township subscription was made by the trustees, who issued bonds to pay it, in different sums, payable to the railroad company or its assignees, at the office of the township treasurer, October 1, 1871, with seven per cent. interest, payable semi-annually, January 1 and July 1. The bonds recite the purpose for which they are issued.

On mandamus, on the motion of H., claiming to be a *bona fide* holder of some of the bonds, to compel the township trustees to levy a tax to pay the interest, held: That upon construction of all the provisions of the acts the county commissioners having been authorized, by a vote of the county, to subscribe stock, the contingency upon which the township might subscribe did not arise, and that the proceedings of the voters of the township and of the township trustees were without authority of law, and the writings purporting to be the bonds of the township are void, and created no obligation in the hands of the company or of the present holder.

MANDAMUS to compel township trustees to levy a tax to pay interest on township bonds.

The Springfield and Mansfield Railroad Company was incorporated by the act of March 21, 1850 (48 O. L. 294). That act provides as follows:

" SEC. 4. The county commissioners of any county through which said railroad may be located shall be, and they are hereby, authorized to subscribe to the capital stock of said company any sum not exceeding fifty thousand dollars," etc.

" SEC. 5. If the county commissioners of any county through which said road shall pass shall not be authorized by the vote of said county to subscribe stock to said road, the trustees of any township through which said road may be located shall be, and they are hereby, authorized to subscribe any sum of money not exceeding fifty thousand dollars to the capital stock of said company, and provide for the payment of said stock in the same manner that the county commissioners aforesaid are authorized; provided, that the total amount which may be subscribed to the capital stock of said company by any county, and the townships therein, on the line of said road, shall not exceed one hundred thousand dollars."

" SEC. 6. No subscription shall be made by the county commissioners of any county, or the trustees of any township, through which said road may be located, until a vote of the qualified voters of such county or township has been declared in favor of such subscription, in the manner pointed out in the mode of proceeding, when county commissioners may be

authorized by law to subscribe to the capital stock of railroads, turnpike roads, or other incorporated companies in this State, passed February twenty-eighth, eighteen hundred and forty-six."

This act of February 28, 1846, provides:

" SEC. 1. That whenever the commissioners of any county in this state shall hereafter be authorized to subscribe to the capital stock of any railroad, turnpike road, or other incorporated company in this state, it shall be the duty of said county commissioners to give at least twenty days' notice, in one or more newspapers, printed and of general circulation in the county authorized to make such subscription, to the qualified voters of said county, to vote, at the next annual election to be held in the several townships (and wards, if any there be), in said county, for or against the subscription, as aforesaid; and if a majority of the electors aforesaid, voting at said election, for or against a subscription, as aforesaid, shall be in favor of the same, such authorized subscription may be made, but not otherwise." (1 S. & C., note 275.)

" An act," passed March 25, 1851, " to authorize special elections, to decide the question of subscription to the Springfield and Mansfield Railroad by counties and townships" (49 O. L. 548), provides as follows:

" SEC. 1. That the county commissioners of the several counties, through or into which the Springfield and Mansfield Railroad shall be located, are hereby authorized to cause the question of subscription to the capital stock of said railroad by county commissioners, provided for in the act to incorporate said company, passed March 21, 1850, to be submitted to the qualified voters of their respective counties, at a special election, to be by them called for that purpose, at any time hereafter, having first given twenty days' previous notice."

" SEC. 2. If the commissioners of any of the counties aforesaid shall not be authorized by the vote as aforesaid to subscribe to the capital stock of said company on behalf of their respective counties, then, and in that case, the question of subscription by township trustees, provided for in the said act incorporating said railroad company, shall be submitted

to the people of the respective townships, at a special election, to be called as provided for in the first section of this act."

"SEC. 3. That said elections shall be conducted, in all respects, in the same manner provided for in said act incorporating said railroad company, except as herein modified by this act."

Under these statutes, and in conformity thereto, a special election was held on the 17th day of June, 1851, by the qualified electors of Delaware county, to decide the question whether the county commissioners should be authorized to subscribe fifty thousand dollars to the capital stock of said Springfield and Mansfield Railroad Company, and the result of the election was that the county commissioners were authorized, by a majority of the votes cast at the election to subscribe said sum to the stock of said company.

On the 17th of July, 1851, an election was held by the voters of Brown township, in said county of Delaware, to decide whether the trustees of the township should be authorized to subscribe for the township seventeen thousand dollars to the stock of said company. The majority of the voters at this election decided against making the subscription.

There is no record of any order for this election, but there was an order therefor by two of the trustees; and a regular poll book and tally-sheet of the election, and a certificate of its result were made, but they were never recorded in any book of records of the township, and were afterward destroyed by the accidental burning of the house of the township clerk. There was no notice of this election ever published in any newspaper of the county.

On the 3d of August, 1851, the name of the company was changed to that of the Springfield, Mount Vernon and Pittsburg Railroad Company.

On the 4th of August, 1851, the county commissioners of Delaware county, in accordance with the vote taken on the subject, June 17, 1851, subscribed fifty thousand dollars to the stock of said company, and thereafter issued and deliv-

ered the bonds of the county for that sum, in payment of the subscription.

On the 30th of August, 1831, a special election was held by the voters of Brown township, at the usual place of holding elections, in accordance with a previous order made by two of the township trustees, and due notice given, to decide for or against the proposition to authorize the township trustees to subscribe seventeen thousand dollars to the capital stock of the railroad companies. The two judges who called the election alone acted as judges thereat. The result of the election was in favor of the subscription, upon the condition that the railroad should be permanently located through the township, so as to pass near the town of Eden. The road was so located, and the trustees subscribed seventeen thousand dollars for the township, to the stock of the company, and on the 20th of April, 1853, the said trustees executed township bonds, in different sums, for the amount of the subscription, payable to the railroad company or its assigns, and delivered the same to the company.

The bonds are alike in form. The following is a copy of one of them :

" United States of America. State of Ohio.
$1000.
" Township of Brown, in Delaware county. Seven per cent. loan.

" Be it known, that the township of Brown, in Delaware county, in the State of Ohio, owes to the Springfield, Mount Vernon and Pittsburgh Railroad Company, one thousand dollars, which sum the said township of Brown promises to pay to the said Springfield, Mount Vernon and Pittsburgh Railway Company, or its assigns, at the office of the treasurer of said township, on the first day of October, A.D. 1871, and to pay the interest thereon, at the rate of seven per cent. per annum, semi-annually ; the first payment to be made on the first day of January, A.D. 1853, and on each first day of January and July thereafter. The said township of Brown, however, reserving to the said township the right to pay the amount hereby secured to be paid, at any time after the first

day of October, A.D. 1860, at their option, they giving notice of the said day of payment, at least six months previous thereto, by advertisement published not less than four consecutive weeks, in a newspaper published in the county of Delaware aforesaid, and after the day of payment so advertised, the interest thereon shall cease.

" This obligation is issued in part payment of a subscription of three hundred and forty shares, of fifty dollars each, to the capital stock of the said Springfield, Mount Vernon and Pittsburgh Railroad Company, made by the said township of Brown, in pursuance of the provisions of several acts of the general assembly of the State of Ohio, and of a vote of the qualified electors of said township of Brown, taken in pursuance thereof.

" In testimony whereof, the trustees of Brown township aforesaid, have hereunto set their hands and seal, this 20th day of April, A.D. 1853.          " JOSEPH C. PORTER,
                                              " SAMUEL S. OLIVER,
                                              " JOHN P. BLACK,
" Attest :                          " *Trustees of Brown township*.
" JASON MERRIHEW,
          " *Township Clerk*."

Attached to each bond are the coupons for the semi-annual installments of interest.

Five of these bonds, for one thousand dollars each, were, on the 7th of July, 1853, by an instrument of writing indorsed on each of them, and signed by the president of the company, under the order of its directors, assigned by the company to Brown, Collins & Brown, or their assigns, for value received, with guaranty of payment.

The bonds thus transferred to Brown, Collins & Brown, came, under their assignment, to the relator, Richard Hopple, who now holds and owns the same.

The records of the railroad company show that at a meeting of its stockholders, in January, 1858, a board of directors were elected, and that Brown township voted at said election upon its stock.

On the 27th of July, 1858, Hopple demanded of the treasurer of Brown township, the payment of the interest due upon the coupons attached to his bonds, which was refused, on the ground that there was no provision made for the payment of the interest.

To compel the trustees of said township to levy a tax to pay said interest, the relator, Hopple, asks the court to grant a peremptory mandamus, upon the facts of the case as stated, and as they appear, substantially, from the alternative writ, answer and proofs.

*Jones & Carper*, for the relator:

1. It is manifest from the plain and reasonable import of the act of March 21, 1850, under which this subscription was made, that any county, and the townships along the line of the road therein, could *together* subscribe $100,000 ; that the county could subscribe $50,000, and any township in the county and on the line of the road, could take (not exceeding) $50,000. The townships could subscribe in amounts of which the sum could not exceed the $50,000.

Statutes of this kind, where the subject matter is left to the people, who alone are to be affected, ought to be liberally construed, with a view to ascertain the intention of the legislature. 2 Ohio St. Rep. 441 ; 3 Ohio St. Rep. 82.

Now, it is clear that the legislature did not intend to say that this road could not possibly have a subscription under this act, *unless* by a county *alone,* or by townships *alone,* for *then* the *total* could not exceed $50,000, and subscriptions could not ever reach the $100,000.

The subscription by the county of $50,000, did not take away, nor deprive the townships along the line in Delaware county from the privilege of subscribing the *other* $50,000.

Smith's Comm. p. 664; 1 Kent's Comm. 460, 461, 462, 463; 2 Mich. (Gibbs), 138; 5 Indiana (Porter), 547; 19 Penn. 211, 219, 220; Smith's Comm. 712, sec. 578.

The legal effect of the act of March 21, 1850, is not impaired or modified by the recital of the first part of section

5 of that act, in section 2 of the act of March 25, 1851. The latter purports by its title, and was enacted simply and solely to permit that to be done at a special election which before could be done only at a general election.

2. Under this statute the sufficiency of the acts needful to be done preliminary to the issuing of the bonds, and on which the authority of the trustees depends, is to be passed upon by the trustees, and their determination is final. 21 How. (U. S.), 539, 544.

3. This township is still the owner of the stock subscribed for. The bonds were issued nearly two years after this election, the road had been located and expense incurred on the faith of this subscription. There has been no offer to return the stock. These trustees, can not, having obtained the benefit from these bonds, now deny their validity, even had there been any violation of the statute. Sedgwick on Stat. and Const. Law, p. 90.

4. Neither the record nor the bonds disclose any irregularity. The bonds are negotiable, and are regularly assigned. The relator is a *bona fide* holder for value in the ordinary course of business, and, as an innocent transferee of these bonds, takes them with rights as complete as those of an indorsee of commercial paper; and they having been issued under color of authority at least, *his* title is perfect and complete, and he is entitled to recover. *Commissioners of Knox County* v. *Aspinwall*, 21 How. 545; *Garrett* v. *Van Horne*, 7 Ohio St. Rep. 327; *Carr* v *Lefevre*, 27 Penn. St. R. 418; *White* v. *Vermont & Mass. R. R. Co.*, 21 How. 575; *Story* v. *Am. L. & T. Co.*, 11 Paige, 635; Redfield on Railways, pp. 595, 596, note " 9;" Pierce on R. R. Law, 371; Am. Law Reg., April, 1861, vol. 9, pp. 338, 346; Am. Law Reg., vol. 6, pp. 589, 617, 618, 619.

5. By the acts of these trustees and of the township, the relator has been *induced* to act and make investments, and they are therefore estopped from denying the validity or legality of their acts. The trustees and tax payers have " stood by, and without protest or objection, permitted the relator to invest his money in their bonds, for their benefit."

The Court will not permit them to defraud him out of it. They have never offered to rescind their contract; it stands against them. *Garret* v. *Van Horne*, 7 Ohio St. Rep. 327, 331, 332; *Zabriskie* v. *C. C. & C. R. R. Co.*, 23 How. 401; 8 Ohio St. Rep. 394, 400–402; Redfield on Railways, p. 85; Am. Law Reg. vol. 6, p. 619; 32 Penn. St. Rep. 218, 228–230, 235; *Bissel* v. *City of Jefferson*, 24 How. 287.

*P. B. Wilcox*, also for the relator, insisted:

That the township was bound to pay these bonds in the hands of a *bona fide* holder for value, without respect to any vote of the township or any action of the trustees previous to issuing the bonds.

That when such bonds were offered for sale in New York, or Boston, or Philadelphia, or London, or Amsterdam, all a purchaser had to do, was to see that the trustees of Brown township *under any circumstances*, had, by law, the power to issue the bonds.

That the legislature in this state, for a long series of years, authorizing such bonds to be issued by cities, counties and townships to aid in the construction of railroads and other public improvements, had commended such securities to public confidence, and that good faith as well as sound public policy required the courts to sustain such securities in the hands of *bona fide* holders, who had invested their money in them.

That, in the present case, the power to issue negotiable bonds being vested in the trustees, ready to be exercised *on a proper occasion*, the township, and not a *bona fide* purchaser, is to take the risk of the actual exercise of the power *on the proper occasion*.

That it does not seem to be a question of *estoppel*, in the ordinary acceptation of the term, but a question of public faith and public policy. In other words, that whenever public officers are authorized to issue, *on any contingency*, negotiable paper, and throw it upon the public market, that paper should be respected, whether the contingency happen or not.

*The Royal British Bank* v. *Turquand*, 32 Eng. L. & Eq.

Rep. 273; *Storey* v. *Amer. Life Ins. Co.*, 11 Paige, 635; *Bank of Illinois* v. *Delafield*, 2 Hill, 159; *Woods* v. *Lawrence County*, 1 Black's Rep. (U. S.) 386; *Gould* v. *The Town of Sterling*, Amer. Law Reg., March, 1862, p. 290.

*N. Rush*, also, for the relator.

*A. G. Thurman*, and *Reid & Eaton*, for defendants:

I. The county having subscribed, the township had no power to subscribe. *Com. of Gallia* v. *Holcomb*, 7 Ohio Rep., pt. 1, 232; *Head* v. *Prov. Ins. Co.*, 2 Cond. Rep. U. S. C. 127; *Straus & Bro.* v. *Eagle Ins. Co.*, 5 Ohio St. Rep. 61; 3 Ia. Rep. 432; 2 Hill, 160; *Trustees of Concord* v. *Miller*, 5 Ohio Rep. 182; *C. W. & Z. R. R. Co.* v. *Com. of Clinton*, 1 Ohio St. Rep. 88, 89; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Bank of Chillicothe* v. *Swayne*, 8 Ohio Rep. 287; *Bartholomew* v. *Bently*, 1 Ohio St. Rep. 37.

The power of Brown township to subscribe, if it existed, must be derived from section 5 of the railroad company's charter, or section 2 of the act of March 25, 1851, or both. There is no other legislation from which to derive it.

Section 5 of the charter *enables* the township to subscribe, if the commissioners of the county "*shall not be authorized by a vote of said county to subscribe.*" It does not enable it to subscribe under any other circumstances; and, therefore, it has *no power* to subscribe under other circumstances. But the *county vote had authorized a county subscription*, and the county subscription *had actually been made*, before even the township election was held, and twenty months before the bonds in question were issued.

The proviso in section 5 should be interpreted as if it read: "That the total amount that may be subscribed, *in* any county, *by* the townships therein, on the line of said road, shall not exceed $100,000." This reading, requiring the change of but one word, "and" to "in," and the transposition of that and another word, is a much less liberty with the text of a statute than has frequently been taken by courts.

Section 2 of the act of March 25, 1851, authorizes the

question of a township subscription to be voted on at a *special election*, to be called, if the county commissioners *shall not* be authorized, by a vote at a special election provided for in the first section, to subscribe, etc. Here is the sole authority to hold a *special election* to vote on the question of a township subscription, and it is made to depend upon a county subscription having been first voted down.

The election under which the relator claims was a special one, held August 30, 1851. Where did the township derive the authority to hold this *special* election? Not from the charter, for that required the vote to be taken at one of the *annual* elections prescribed by law; and not from the act of March 25, 1851, as above shown.

II. The foregoing defense is available against Hopple, the relator.

1. There is no statutory estoppel in the case. There is no statutory provision that the so-called bonds shall be *prima facie* even, much less conclusive evidence of anything. Indeed, there is no statute authorizing their issue to the company in payment for stock.

2. Upon general principles, Hopple was bound to take notice of the *defect of power* aforesaid. The bonds were issued by the trustees of a township, and expressed upon their faces for what they were issued. And the defect of power was not owing to any omission of anything that the township or its trustees could perform; nor to any act of commission of theirs. Under these circumstances, the authorities are conclusive that, upon the general principles of the law, Hopple took the bonds subject to their infirmity aforesaid. Angell and Ames on Corp., 3d ed., 285, 286; *Concord Township* v. *Miller*, 5 Ohio Rep. 182; *Treadwell* v. *Com. of Hancock County*, 11 Ohio St. Rep. 191, 192; *Com. Knox County* v. *Aspinwall*, 21 How. (U. S.) 543, 544; *Pearce* v. *M. & I. R. R. Co. and P. & I. R. R. Co.*, Id. 443, 444, 445.

3. The trustees of the township were not constituted a tribunal to decide *conclusively* on the existence of the conditional fact that would authorize them to subscribe. No

statute confers any such function upon them; and certainly they do not derive it from general principles. *Treadwell* v. *Com. of Hancock County*, 11 Ohio St. Rep. 191; *Goshen Township* v. *Shoemaker et al.*, 12 Ohio St. Rep. 628.

4. But were the trustees clothed with power to decide conclusively as to the existence of the conditional fact, they never have so decided. They never have decided that Delaware county had not authorized a subscription; and so, in any view, we are not estopped to show the truth.

5. There is no estoppel *in pais* here, arising out of acquiescence on the part of the township or its trustees. For:

(1.) There has been no such acquiescence. To issue the bonds is all that has been done. Not a cent of principal or interest has been paid. Not a cent of taxes, for any such purpose, has been levied. No demand for either has ever been made, except by the institution of this suit. Not a foot of the road has been made in the township.

(2.) There is no estoppel *in pais* where the infirmity of the bonds is a *defect of power to issue them*. Where there is an absence of power, the act is *void*.

"Where there is no legal power, an attempt to act can be followed by no legal consequence." Nash's Dig. 679, sec. 7, *Ludlow's Lessee* v. *McBride*, 3 Ohio Rep. 240, 259.

Acquiescence of the principal may amount to a *ratification*, where the act is capable of ratification. It is not upon the doctrine of estoppel that he is bound; but, because he has *ratified* the act. But void things, in the language of Coke, are "as no things." They are incapable of ratification.

6. Hopple is not a *bona fide* holder. When he took the bonds, a large amount of interest was overdue—not a cent having been paid.

*James R. Hubbell*, also for defendant.

SUTLIFF, C.J.—The proceeding by mandamus is authorized to compel any inferior tribunal, corporation or board, to perform an act which the law specially enjoins as a duty resulting from the office, trust or station, unless such duty depends

upon the judgment or discretion properly to be exercised by such party.

In the present case, if the bonds or undertakings mentioned in the motion, are, in the hands of the present holder, valid and obligatory upon the township, the interest thereon being overdue, it is obviously the duty of the trustees of Brown township to proceed to levy the necessary tax for the payment thereof; but if the bonds are invalid, the duty does not exist.

There is a view of this case presented that should be noticed at the outset; for, if correct, it will preclude the necessity of any particular inquiry into the circumstances under which the bonds have been issued.

It is urged, with much force, on the part of counsel for the relator, that a long course of legislation, in this state, in favor of the issuing of such bonds, for the construction of our public improvements, has resulted in giving this kind of securities that public confidence and large circulation in the community peculiar to commercial paper; and that good faith to those who have, by such legislation, been invited to advance their money upon these securities, as well as public policy, requires such a construction of these statutes as will not destroy the validity of the securities, and greatly impair public confidence. It is, therefore, urged that these public municipal corporations should be, to some extent, regarded as private moneyed corporations, and that the very act of issuing such paper, by the authorities of the township, authorized by legislation, under any circumstances, to make and issue the paper, should be held conclusive of the liability of the township upon the paper in the hand of a *bona fide* holder, for value.

We have carefully considered these important suggestions, and the able argument of counsel in support of this view of the case. But we think the rules of law, well established by former adjudications upon similar questions, and held by our own and other courts as applicable to the facts here presented, forbids the adoption of the views thus urged as applicable to these securities.

The validity of these securities, as contracts, must, then,

necessarily depend upon the general principle governing all contracts. There must, in the first place, have been parties capable to contract, and also a lawful subject matter of contract, as well as an actual contract made in the case, in order to constitute a valid contract.

It is not denied, in this case, that memorandums purporting to be the contract, are sufficient in form. But it is denied that there appears to have been parties capable of contracting in the matter.

Whatever powers to contract are possessed by either of the parties to this contract, they being mere bodies politic and corporate, are necessarily conferred upon them by the legislature.

The railroad company is evidently invested, by its charter and the several acts of the legislature referred to, with power to contract, in relation to the receiving of subscriptions and bonds, for the construction of its road—the object for which these bonds appear to have been executed to them. It remains, therefore, only to ascertain, upon this point, whether the township trustees had the power to issue said bonds, on their part. If they had, they, too, were a party capable of contracting, or making the contracts under consideration; but, if otherwise, then it must follow that there are not parties to these contracts capable of contracting.

The township, although denominated by the statute a body politic and corporate, is not invested with the general powers of a corporation. This class of aggregate persons, incorporated for mere municipal purposes, are often denominated *quasi* corporations, and are invested, by the statutes creating them, with limited powers only, co-extensive with the duties imposed upon them. The same is true of the trustees, and other officers through whom they act. They, in like manner, only possess the powers expressly conferred upon them, as such body and officers respectively, by the statute, and, perhaps, where the statute is silent upon the subject, the authority, by necessary implication, which is requisite to execute the duties so imposed upon them. In the exercise of their powers, as trustees of the township, the trustees can take

nothing by implication, therefore, beyond the authority thus conferred by the statute.

The liberality extended to the proceedings of those inferior jurisdictions, in the exercise of their powers, as respects regularity and form, does not extend to their powers to, in any respect, enlarge the same. It follows, therefore, that the trustees, by virtue of their powers as trustees, were not, by virtue of the statute organizing townships, and authorizing the election of trustees, and conferring their powers and prescribing their duties, authorized to make the contracts in question. But their powers, if possessed for that purpose, must have been conferred by some other act or acts of the legislature.

It only remains, therefore, in determining this question of power, to ascertain whether the legislature has, by any other act of legislation, conferred the power upon the trustees, or made it their duty, to make the subscription or undertaking to this railroad company.

The only acts of the legislature relating at all to the subject, are those set forth in the statement of the case. Do those statutes, either of them or when taken together, confer the power?

Upon recurring to the provisions of the several acts, it appears, in the first place, that the legislature, by the act of February 28, 1846, required the commissioners of any county in this state, whenever thereafter authorized to subscribe to the capital stock of any railroad, etc., to give at least twenty days' notice, in one or more newspapers, etc., to the qualified voters of said county to vote, at the next annual election, to be held in the several townships, and wards, if any there should be, in said county, for or against the subscription; and to subscribe or forbear to subscribe according to the result of such vote being in favor of or opposed to the contemplated subscription.

And by the act of March 21, 1850, incorporating the Springfield and Mansfield Railroad Company, the county commissioners of any county through which the road should be located, were authorized to subscribe any sum not exceeding *fifty thou-*

*sand dollars.* And the next section provides, that if the com missioners shall not be authorized by the vote of the county to subscribe stock, etc., *the trustees of any township* through which the road may be located, shall be authorized " to subscribe any sum not exceeding fifty thousand dollars, to the capital stock, and provide for the payment of said stock, in the same manner that the county commissioners aforesaid are authorized; provided that the *total amount* which may be subscribed to the capital stock of said company by any county, and the townships therein, on the line of said road, shall not exceed *one hundred thousand dollars.*" And the next section provides that no subscription shall be made by either the commissioners or trustees until a vote of the qualified voters shall have been declared in favor of the subscription in the manner provided by the act of February 28, 1846. And that act, as we have seen, requires the vote to be taken upon the notice therein prescribed, " at the next annual election to be held in the several townships  *  *  *  in said county."

The charter of the company, therefore, only authorized the trustees to subscribe " any sum of money not exceeding fifty thousand dollars," upon the condition that " the county commissioners  *  *  *  shall not be authorized by the vote of the county to subscribe." This is clearly the extent of the power, by the language of the act, conferred upon the trustees. And there could be no question of any further power by implication, were it not for the proviso at the end of the section, and immediately following the express grant of power.

That the proviso was intended to, and does, in fact, restrict the power otherwise conferred, is evident. For in case the county vote should be adverse to a county subscription, in that event each township through which the road should pass, would be authorized, but for the proviso, to subscribe fifty thousand dollars. And in order to restrict the proviso to this sole purpose, and thereby remove all appearance of intention to enlarge the powers of the trustees inconsistent with the previous express grant of their powers, it has been urged that a slight change of words should be made in the reading. It is suggested that, by a liberal rule of interpretation, it might be

thus read : " that the total amount that may be subscribed *in* any county *by* the townships therein on the line of said road shall not exceed $100,000." The proposed change in the two words indicated, is, it is true, only a slight change, and may quite probably thereby make the sentence conform to the intent of the legislature. It might, however, be very properly objected to the proposed change in the reading, that it is forbidden by the maxim, " *a verbis legis non est receden-dum.*" And it may well be doubted, whether the proposed change of the words is admissible as an exception to the very general and important rule, that statutes are to be read according to the natural import of their language.

But even if the proviso be so read as to give full effect to the words used, there are no words in the proviso removing the express limitation of the powers of the trustees, to the failure of the commissioners being authorized to subscribe. And, as we have seen, the next section of the charter prohibits both the commissioners and trustees from subscribing until after the vote of the qualified voters at the *annual election* has been declared in favor of such subscription. And, inasmuch as no vote, taken at any *annual* election, has ever been declared in favor of such subscription, it is therefore impossible that by any construction of the proviso, power could have been derived by the trustees of the township under the charter.

It is, therefore, to the act of March 25, 1851, entitled " an act to authorize *special* elections," that we are to look for the powers claimed by the trustees, to have been derived by a *special* election held according to the provisions of that act.

But under this act of 1851, it will be perceived that while the county commissioners are authorized without any restrictions to submit the question of subscription, upon due notice, to the qualified voters at a *special* election, the question of subscription by township trustees *is only* allowed to be submitted to the people of the township at a *special* election, in *case the county commissioners* of the county *shall not be authorized* by vote to subscribe. It therefore follows, that inasmuch as the county commissioners of Delaware county,

in this case, *were authorized* by the voters of the county to subscribe, and did subscribe, to the capital stock of the road, the township trustees were not authorized or empowered by the provisions of the act to submit the question to the people at a *special* election; since it is so provided, *only* in the case where the county commissioners had *not* been so authorized by the voters.

It appears, therefore, that the *special* elections so held by the people of Brown township, both on the 17th of July, and on the 30th of August, 1851, were neither of them authorized by any existing statute; and the township trustees consequently were not empowered by any statute to subscribe to the capital stock of said company, and provide for the payment of the subscription. The issuing of said bonds by the trustees was therefore without any statutory authority or power on their part as such trustees. For it is a well-established principle, that where a power is claimed under a statute affecting a community, and requiring as a condition to the validity of the statute, that something should be done, or some event happen before it goes into operation, the statute has, in such case, no force or effect until the event has happened, or the thing so required to be done is performed. This is unlike a case where the statute affects only one or more persons designated by the act, in which case it is true the person or persons interested in the object may dispense with the preliminary condition, and claim the benefit of the statute, without requiring the performance of such condition in their favor. *Savage and Barrington* v. *Walshe and Emanuel*, 26 Ala. 619.

It is, however, insisted on the part of the relator, that even "if the trustees had *no power* to present this question with the alleged condition, yet the voters having decided *for* subscription, the authority in the trustees would thereby become absolute, and the condition void."

If the authority of the trustees rested upon the ground of agency merely, and all the parties now interested as taxpayers had voted in favor of the subscription, the argument would be of some weight. But in the present case it is not

pretended that more than a bare majority of the voters at the last election, voted in favor of the trustees subscribing stock on their behalf; while all the remainder of the voters of the township voted their refusal to suffer said trustees to subscribe. If, therefore, it could be shown that the same voters then acting, and no others, are now the taxpayers of said township, this would by no means be a case in which the taxpayers of Brown township would be, either in law or equity, bound, as having executed the contracts or bonds in question by their agents. And this conclusion must necessarily result from the fact that no one citizen, nor any number of citizens of a township, is authorized, either by statute or by the circumstance of their living in the same township or neighborhood, to obligate another citizen of the same township, or to subject his property to the payment of a contract which he has neither made nor consented to.

We are referred, however, to the case of *Garrett et al.* v. *Van Horne,* 7 Ohio St. Rep. 332, as maintaining a contrary doctrine. We do not recognize that case as necessarily opposed to the views above expressed. The facts of that case were briefly as follows: Under the act of March 12, 1849, and January 16, 1851, authorizing the trustees of Jefferson township to subscribe for the stock of the Steubenville and Indiana Railroad Company, an election was duly held (August, 1851), and a certificate of the election, in favor of subscription, duly filed in March, 1852, recorded in the recorder's office, and subscription made, and bonds issued by the trustees in April, 1852, and the amount of interest upon the bonds for 1856, was assessed, and paid into the treasury of the county; and the auditor refused to give an order to the holders of the bonds for the same, inasmuch as the town authorities insisted that the bonds were void for the reason that the road was not in fact located and constructed through the township until after the 1st of April, 1852. The authority conferred in that case by the statute is thus expressed: "The mayor and town council of the town of Steubenville, and all other incorporated towns through or near which said road may be located, * * * are each respectively hereby authorized

to subscribe to the capital stock of said company," etc.   It thus appears that the authority to the town of Steubenville was conferred (upon vote, as expressed in the next section) to subscribe irrespective of the location of the road.   Nor does the act require that other incorporated towns, " through or near which the said road may be located," should withhold either their vote or subscription until after the location of the road.   The power was therefore fully conferred by the statute. And its early exercise before the actual location, could only, after the location of the road, be objected to as an impropriety in time, or at most as a mere irregularity on the part of the town authorities, even if the location of the road " through or near " the town, related to Steubenville as well as to other towns.   There was not, therefore, in that case, any want of power in the town authorities, at the time of their so subscribing to the stock and issuing the bonds.

In delivering the opinion in that case, Judge Swan, it is true, makes use of the following language : " When public officers exceed the powers vested in them by general laws, their acts are no longer official, but void ; and this principle would be applicable to the case before us, if the trustees had derived their sole authority to make the contract under consideration from the law, without any interposition, sanction or authority from the taxpayers of the township.   But in the case before us, the trustees derived their authority to subscribe for the stock of the railroad, and to issue the bonds, specifically from the taxpayers of the township," etc.   The language thus used, it will be perceived from a statement of the case, may be regarded rather as a *dictum*, than as at all necessary to support the decision made upon the facts of that case.

It is certainly impossible to regard the issuing of the contracts or bonds, in this case, as a transaction either made or authorized by the present taxpayers of the township with the railroad company.   For, as we have seen, in order to arrive at such a conclusion, it is necessary to show, not only that the present taxpayers are the same taxpayers, and no others, who resided in the township at the time of issuing

the bonds, but also that those who voted against the subscription thereby authorized or empowered the trustees to impose upon them the obligations expressed by the bonds. Indeed, the bonds do not profess to impose any obligation upon natural persons, but merely upon the township in its corporate capacity.

Again, it is said that the bonds in this case are at least issued under the color of authority; and that third persons, and the public, in the absence of notice, have a right to presume a compliance with the conditions on the part of the trustees, and that the bonds were legally issued by them.

If the defect in the bonds were a mere irregularity in the issuing of them, or if the bonds were those of a private corporation, there would be much force in the argument; but it certainly does not reach the objection, that the trustees in this case had no power to make a contract obligatory upon the township, a mere municipal corporation, at the time they made and delivered the bonds.

It is also apparent that all persons receiving these bonds or securities were notified by the recitals upon their face, that their validity depended upon the statutory provisions and requisitions under which they were issued having been complied with, so far at least as to authorize their issue. And the trustees were not, either by statute or by virtue of their office, constituted a tribunal, or authorized, to decide upon their own authority to issue the bonds, as against the township upon which the obligation was to be imposed.

Nor can it be said that there has been any such acquiescence or conduct on the part of the taxpayers of the township in this case, even if it were conceded that could in such a case constitute an answer to the want of power to issue the bonds, which distinguishes this case from that of *Treadwell* v. *Commissioners of Hancock County*, 11 Ohio St. Rep. 191. And we are satisfied with the correctness of the principles of law as expressed in that case, and again in the case of *Goshen Township* v. *Shoemaker*, etc., 12 Ohio St. Rep. 624.

In accordance with the foregoing views in regard to the facts of this case, and the principles of law applicable thereto,

the motion of the relator must be dismissed, and judgment entered in favor of the defendants.

Judgment accordingly.

PECK, GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred