Scott, J.
The bondholders who, by their cross-petition in the court below, claim an interest in the mortgage in question, were not parties thereto. Baker, through whom the defendant in error derives title to the premises, was the mortgagor, and Brown township, as a municipal corporation, was the mortgagee. All the transactions connected with the giving of the mortgage were between the mortgagor and mortgagee, and did not purport to affect the rights or interests of other persons. The proposition submitted by Baker and the other mortgagors to the township trustees shows upon its face that the purpose in contemplation was nothing more than indemnity to the township against the increased burdens of taxation which might arise from a subscription on behalf of the township to the capital stock of the railroad company. The object to be accomplished was the removal of objections to a vote in favor of subscription, by taking upon them *125 selves the obligations of payment, which might arise from subscription. In pursuance of this proposition, Baker and the other mortgagors subsequently executed their bonds to the township trustees, in which they recite, among other things, that they “ have assumed the responsibility of saving said trustee's harmless from all demands, both for principal and interest, on ” such portion of the township bonds as they severally agree with the township to become responsible for. The condition of defeasance stated in the bonds is, in substance, that the obligors shall severally pay, or cause to be paid, either to the holder or holders of said bonds, or to said trustees, the interest on the amount by them severally assumed, as it shall become due thereon, and so much of the principal as shall not be paid by dividends on a corresponding amount of stock, and upon such payment then the said amount of stock, or any number of shares thus paid, shall be made over to the obligors severally, and the above obligation shall be void. The mortgages in question were given to secure the performance by the obligors of their covenants contained in these bonds.
These bonds and mortgages were evidently executed, delivered, and accepted by the parties thereto, under the belief that a majority of the electors of Brown township could, by their votes upon that question, confer upon the trustees of the township full power and authority to bind the township by a subscription on its behalf to the capital stock of the railroad company. But this belief rested bn a misapprehension and misconception of existing laws. At the suit of Hopple, tb.e plaintiff in error liere, against the trustees of Brown township, it has been adjudged by the Supreme Court of this state, that “ the contingency upon which Brown township might subscribe to the capital stock of the railroad company never arose; and that the proceedings of the voters of the township, and of the township trustees, were without authority of law, and that the writings purporting to be the bonds of the township are void, and created no obligation in the hands of the company or *126 of the present holders.” Hopple v. The Trustees of Brown Township, 13 Ohio St. 311.
As between plaintiff in error and Brown township, it is, then, res adjudieata, that the township bonds, on behalf of which he claims the mortgage in question to be a security, are absolutely null and void. Neither interest nor principal has ever become or can become due thereon. And, as between the parties to the mortgage, we think it clear that there neither has been nor can be any breach of its condition of defeasance.
With full knowledge of all the facts relating to the undertaking of the mortgagors (as the cross-petition shows), the railroad company dealt only with the trustees, who professed to act solely on behalf of their township, and not in the name or by the authority of the mortgagors, in making the subscription and issuing the bonds. There is, therefore, no room for the claim that in making the subscription and issuing the township bonds the trustees 'were the mere agents of the mortgagors. They were not dealt with in that capacity, and there was no undisclosed principal in the case. The contracts evidenced by the subscription and the bonds, could not have been entered into with the mortgagors as principals acting, directly for themselves, and what they could not do directly, per se, they could not do indirectly, per alium. The written obligations of the mortgagors clearly show that it was no part of their purpose to induce the railroad company to accept a subscription from the township. The willingness of the company to accept a township subscription seems to be taken for granted in all quarters.
The only difficulty to be overcome, was the unwillingness of the electors of the township to sanction a subscription by-their votes, and, to obviate this difficulty, was the sole purpose of the arrangement made between the mortgagors and the township. No obligations were assumed for the benefit of the railroad company, or the holders of the bonds which the township might issue. The contract was with and for the security of the township alone, and *127 was in effect an agreement to purchase from the township such stock as it might acquire in virtue of its subscription.
To this agreement the railroad company was not a party, and was wholly unaffected by its stipulations; and we can perceive no right which it had to rely upon that agreement as a security for the payment of the subscriptions which it accepted from the township. The bonds which it accepted in payment of the subscription contained no reference whatever to any such security, and they were put upon the market and negotiated upon the sole guaranty of the railroad company, before the mortgages in question were even filed for record.
In the total absence of any privity of contract between the mortgagors and the plaintiff in error, or other holders of the township bonds, we can perceive no grounds, legal or equitable, upon which the cross-petitions, in the court below, can be sustained.
But it is claimed that defendant in error is estopped to deny the validity of the township bonds. We are unable to perceive the grounds upon which such an estoppel can be legally predicated. The pleadings show no equitable estoppel arising from matters in pais. The mortgagors were parties neither to the stock subscription made by the township trustees, nor to the bonds which they assumed to have power to issue. The contract of the mortgagors with the township, no doubt, was based on the supposition' that, by force of statutes previously enacted, the trustees could be authorized, by the vote of the township, to subscribe to the stock of the railroad company! And the subscription of the trustees was accepted by the railroad company on the same supposition. But, in fact, there was no law purporting to authorize such subscription under the circumstances and at the time when it was made. A county subscription had been previously authorized and made, and the statute gave no color of authority for an additional subscription by the township.
Of the laws relating to its corporate powers, the railroad company was, at least, as much bound to take notice as *128 were other parties. The power of the township trustees to subscribe to its stock was a question of law, upon which it had no right to rely upon the opinion of parties with whom it had no direct dealings. And if, as has been held, the township of Brown, with whom alone the railroad company contracted, is not estopped to deny the validity of its unauthorized subscription, and of its equally unauthorized bonds, we see no grounds upon which parties who never contracted with the company can be so estopped.
Had the township trustees made no question as to the validity of the bonds which they issued, and, having paid them, were now seeking to enforce the mortgages in question for their indemnity, a very different case would be presented, and it might well be held that, as against the township, the mortgagors would be estopped to deny the validity of the township bonds, and of their own contracts of indemnity. But as against others, who were not parties to these contracts, and had no right to rely upon them, we think no such estoppel can arise.
We think the court of common pleas did not err in sustaining the demurrer to the cross-petition of plaintiff in error, and that its judgment was, therefore, properly affirmed by the district court.
Johnson, Chief Judge, dissented.