## NORTHERN BANK OF TOLEDO *v.* PORTER TOWN-SHIP TRUSTEES.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

Argued January 21st, 1884.—Decided March 3d, 1884.

*Estoppel—Municipal Bonds—Statutes of Ohio.*

The act of the legislature of Ohio of March 21st, 1850, as amended March 25th, 1851, authorized county commissioners to submit to the people at special elections the question whether the county would subscribe to the stock of a railroad company and issue bonds in payment thereof; and if the subscription should not be authorized by the county, then that the question of subscriptions by township trustees might be submitted to the people of the respective townships. *Held,* That until refusal by the counties to subscribe, either by direct vote or by failure within a reasonable time to call an election for the purpose, the townships were without legislative authority to subscribe, or to issue township bonds in payment of subscriptions.

A municipal corporation which issues a bond reciting on its face that it is issued in part payment of a subscription to the capital stock of a railroad made by the corporation in pursuance of the several acts of the general assembly of the State and of a vote of the qualified electors of the corporation taken in pursuance thereof, is estopped thereby from denying that an election was held, or that it was called and conducted in the mode required by law; but it is not estopped from showing that the corporation was without legislative authority to issue the bonds.

The facts which a municipal corporation, issuing bonds in aid of a railroad, is not permitted, against a *bona fide* holder, to question, in face of a recital in the bonds of their existence, are those connected with or growing out of the discharge of the ordinary duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued. The cases relating to this point examined and reviewed.

This was an action to recover principal and interest of bonds

issued by the defendant in error (also defendant below), in payment of a subscription to a railroad. The defence of want of legislative authority is set forth in the opinion of the court. Verdict for the defendants. The plaintiffs excepted to the charge, and brought the case here by writ of error.

*Mr. E. W. Kittredge,* for plaintiff in error.

*Mr. W. M. Ramsey,* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

On the 15th day of April, 1851, the commissioners of Delaware County, Ohio, passed an order submitting to the voters of that county, at a special election to be held on the 17th day of June thereafter, a proposition to subscribe the sum of $50,000 to the capital stock of the Springfield and Mansfield Railroad Company, a corporation created under the laws of that State, and whose name was subsequently changed to that of the Springfield, Mount Vernon and Pittsburgh Railroad Company. This proposition was approved by the electors, and subsequently, August 4th, 1851, the county commissioners made a subscription of the amount voted, payable in bonds of the county.

On December 6th, 1851, the commissioners signed the requisite number of bonds, payable to the railroad company, and deposited them with the auditor for delivery when the road was located and a contract made for its construction through the county. It having been claimed that these bonds were defectively executed, others were signed by the commissioners on the 27th day of December, 1852, to be retained by the auditor until those first signed were returned, which being done that officer was directed to deliver the new bonds to the company or to some person authorized to receive them.

After the vote in favor of a county subscription of $50,000, and two days before the formal subscription in its behalf by the county commissioners, that is, on the 2d day of August, 1851, the trustees of Porter Township, in Delaware County, passed an order submitting to the voters of that township, at a special election to be held on the 30th day of August thereafter, a proposition for a subscription of not exceeding $10,000 and

not less than $8,000 to the capital stock of the same company, payable in township bonds, upon the condition that the road should be permanently located and established through that township. The proposition was approved by the voters, and subsequently, on May 6th, 1853, township bonds for the amount voted with interest coupons attached were issued. They were made payable to the railroad company or its assignees, and were in the customary form of negotiable municipal bonds. Each one recited that it was "issued in part payment of a subscription of one hundred and sixty shares of $50 each to the capital stock of the said Springfield, Mount Vernon and Pittsburgh Railroad Company, made by the said township of Porter in pursuance of the provisions of the several acts of the general assembly of the State of Ohio and of a vote of the qualified electors of said township of Porter taken in pursuance thereof."

This action involves the liability of the township upon these bonds. The judgment below necessarily proceeded upon the ground that they were void for want of legal authority in the township to issue them. In behalf of the plaintiff in error, the present holder of the bonds, it is claimed that there was statutory authority for their issue, and that, apart from any question of such authority, the township is estopped by their recitals, and by numerous payments of annual interest, from disputing its liability. Whether the township had legal authority to execute them, is the first question to be considered.

By the first section of an act of the general assembly of Ohio, passed February 28th, 1846, it is provided that whenever county commissioners should thereafter be authorized to subscribe to the capital stock of any railroad company incorporated in that State, it shall be their duty "to give at least twenty days' notice . . . to the qualified voters of said county to vote at the next *annual* election to be held in the several townships . . . in said county for or against the subscription as aforesaid; and if a majority of the electors aforesaid, voting at said election for or against a subscription as aforesaid, shall be in favor of the same, such authorized subscription may be made, but not otherwise." 1 S. & C., note, 275.

By the charter of the Springfield and Mansfield Railroad

Company; granted March 21st, 1850, it is provided that "the county commissioners of any county through which said railroad may be located, shall be, and they are hereby, authorized to subscribe to the capital stock of said company any sum not exceeding $50,000," and for the payment thereof power was given to borrow money, lay and collect taxes, &c.; further, that "if the county commissioners of any county through which said road shall pass, shall *not* be authorized by the vote of said county to subscribe stock to said road, the trustees of any township through which said road may be located shall be, and they are hereby, authorized to subscribe any sum of money not exceeding $50,000 to the capital stock of said company, and provide for the payment of said stock in the same manner that county commissioners aforesaid are authorized : *Provided*, That the total amount which may be subscribed to the capital stock of said company by any county, and the townships therein, on the line of said road, shall not exceed $100,000 ;" still further, that "no subscription shall be made by the county commissioners of any county, or the trustees of any township through which said road may be located, until a vote of the qualified voters of said county or township has been declared in favor of such subscription, in the manner pointed out in the mode of proceeding when county commissioners may be authorized by law to subscribe to the capital stock of railroads, turnpike roads, or other incorporated companies in this State, passed February 28th, 1846." 48 O. L. 294; Act March 21st, 1850, §§ 4, 5, and 6.

But by an act passed March 25th, 1851, county commissioners of the several counties, through or into which the Springfield and Mansfield Railroad shall be located, were authorized to cause the question of subscription provided for in the act of March 21st, 1850, "to be submitted to the qualified voters of their respective counties, at a *special* election, to be by them called for that purpose, at any time thereafter, having first given twenty days' previous notice ;" further, that "if the commissioners of any of the counties aforesaid shall *not* be authorized by the vote as aforesaid to subscribe to the capital stock of said company on behalf of their respective counties, *then*,

*and in that case,* the question of subscription by township trustees provided for in the same act incorporating said railroad company shall be submitted to the people of the respective townships, at a *special* election, to be called as provided for in the first section of this act"—such elections to be conducted in all respects in the same manner provided for in the charter of the company, except as modified by the said act of March 25th, 1851.

The authority of Porter Township to issue the bonds in question must be derived from the provisions of these acts of assembly. If not found in them, it must be adjudged that no such authority existed.

The fundamental proposition advanced in behalf of plaintiff is, that immediately upon the passage of the act of March 21st, 1850, Porter Township was vested with power to make a subscription to the stock of the company, that the non-authorization of the commissioners, by a vote of the electors, to make a county subscription, was only a condition precedent to the exercise of that power; consequently, that the township is estopped by the recitals in the bonds, and its acquiescence for a series of years, as evidenced by payments of interest, to rely upon the non-fulfilment of that condition. In this construction of the acts in question we are unable to concur. It is entirely clear, we think, that the township was without power to make a subscription until the time arrived when it could be properly said that the county, as such, had not been authorized by a vote of the electors to make a subscription. We do not mean to say that the right of townships on the line of the road to make subscriptions could be indefinitely postponed by the mere neglect or failure of the county commissioners to submit the question of subscription to a popular vote. That construction, the Supreme Court of Ohio correctly said in *Shoemaker* v. *Goshen Township*, 14 Ohio St. at p. 580, "would defeat the manifest intention of the statute, which contemplates and authorizes the submission of the question to townships, when subscription on behalf of the county is refused." Such refusal would undoubtedly exist, whenever the electors upon a submission of the question expressed their disapproval of a county

subscription. But within any just interpretation of the words of the statutes, the power of townships to act would come into existence, not only by a direct refusal of the commissioners to submit the question of subscription to popular vote, but upon their failure within a reasonable time to call an election for that purpose. *Shoemaker* v. *Goshen Township, supra.*

The first annual election in townships after the passage of the act of March 21st, 1850,—which act, by reference to that of 1846, contemplated that the question of subscription would be determined at an annual election—was on the first Monday in April of that year. No submission, however, of that question could have been ordered for *that* election, because it occurred within twenty days after the passage of the act of 1850. The short time intervening between those dates prevented the requisite notice being given; consequently, the first annual election in townships at which the county commissioners could, under that act, have taken the sense of the electors, was that fixed by law for the second Tuesday of October, 1850. Did the mere failure to submit the question of a county subscription at the last-named election justify the township in claiming that the commissioners had not been authorized by a vote of the county to make a subscription? Were townships, from and after that date, and solely because of such failure, invested with power to move in the matter of subscriptions to the stock of this company? These questions we deem it unnecessary to determine; for, if answered in the affirmative, it still appears that no such power was in fact exercised by Porter Township prior to the passage of the act of March 25th, 1851; by which act, as correctly adjudged by the Supreme Court of Ohio in *Shoemaker* v. *Goshen Township*, the former statutes were so far modified as not only to renew the power of county commissioners to subscribe for the stock of this company, if thereunto authorized by the voters at a special election, but in language more direct and specific than employed in former statutes, to make the authority of townships to subscribe depend upon the county commissioners not having been authorized to make a county subscription. The general assembly of Ohio, it must be presumed, knew at the passage of the act of March 25th, 1851, what particular

counties and townships had then made subscriptions to the stock of this railroad company. That act was passed with reference to the situation as it actually was. When, therefore, upon the basis of non-authorization of the commissioners to make a county subscription, it was provided, in the act of March 25th, 1851, that " then, and in that case " townships might subscribe, it must have been intended that the authority of any township, which had not *then* acted, to subscribe should exist only where, after the passage of the latter act, a county subscription had been negatived either by a vote of the people or by the refusal or failure of the commissioners within a reasonable time to submit the question to a popular vote. If this be not so, then Porter Township would have been authorized in its discretion to vote on a proposition to subscribe either at the annual election in April, 1851, or at any special election thereafter held, notwithstanding the county may have previously made a subscription. But such we cannot suppose to be a correct interpretation of the statute. Consequently, from and after March 25th, 1851, it was apparent from the terms of the act of that date that Porter Township had no legal authority to make a subscription of stock, except in the contingency—which the township could not control, but of which it and all others were bound to take notice—that the commissioners had not been authorized to subscribe for the county. So far from that contingency ever arising, the commissioners (before the township election was called) had been authorized by popular vote to subscribe, and they did in fact subscribe, the sum of $50,000. It cannot, therefore, be said that the commissioners were not authorized by a vote of the county to subscribe at the time Porter Township voted ; consequently, the latter was without legal authority to make a subscription. This conclusion is satisfactory to our minds, and is, besides, sustained by the decision of the Supreme Court of Ohio in *Hopple* v. *Trustees of Brown Township in Delaware County*, 13 Ohio St. 311, reaffirmed in *Hopple* v. *Hipple*, 33 Ohio St. 116.

It is, however, contended, that by the settled doctrines of this court, the township is estopped by the recitals of the bonds in suit, to make its present defence. The bonds, upon their

face, purport to have been issued "in pursuance of the pro-
visions of the several acts of the general assembly of the State
of Ohio, and of a vote -of the qualified electors in said town-
ship of Porter, taken in pursuance thereof."   These recitals,
counsel argue, import a compliance, in all respects, with the
law, and, therefore, the township will not be allowed, against
a *bona fide* holder for value, to say that the circumstances did
not exist which authorized it to issue the bonds:   It is not to
be denied that there are general expressions in some former
opinions which, apart from their special facts, would seem to
afford support to this proposition in the general terms in which
it is presented.   But this court said in *Cohens* v. *Virginia,* 6
Wheat. 264, and again in *Carroll* v. *Lessee of Carroll,* 16 How.
275, 287, that it was " a maxim not to be disregarded that
general expressions, in every opinion, are to be taken in con-
nection with the case in which those expressions are used.   If
they go beyond the case, they may be respected, but ought not
to control the judgment in a ·subsequent suit when the very
point is presented for decision."   An examination of the cases,
in which those general expressions are found, will show that
the court has never intended to adjudge that mere recitals by
the officers of a municipal corporation in bonds issued in aid of
a railroad corporation precluded an inquiry, even where the
rights of a *bona fide* holder were involved, as to the existence
of legislative authority to issue them.

A reference to a few of the adjudged cases will serve to
illustrate the rule which has controlled the cases ·involving the
validity of municipal bonds.   In *Commissioners of Knox County*
v. *Aspinwall,* 21 How. 539, power was given to county com-
missioners to subscribe-stock to be paid for by county bonds, in
aid of a railroad corporation, the power to be exercised if the
electors, at an election duly called, should approve the sub-
scription.   It was adjudged that as the power existed, and
since the statute committed to the board of commissioners au-
thority to decide whether the election was properly held, and
whether the subscription was approved by a majority of the
electors, the recital in bonds executed by those commissioners,
that they were issued in pursuance of the statute giving the

power, estopped the county from alleging or proving, to the prejudice of a *bona fide* holder, that requisite notices of the election had not been given. In *Bissell* v. *City of Jefferson-ville*, 24 How. 287, the court found that there was power to issue the bonds, and that after they were issued and delivered to the railroad company it was too late, as against a *bona fide* holder, to call in question the determination of the facts, which the law prescribed as the basis of the exercise of the power granted, and which the city authorities were authorized and required to determine before bonds were issued.

Probably the fullest statement of the settled doctrine of this court is found in *Town of Coloma* v. *Eaves*, 92 U. S. 484. In that case the authority to make the subscription was made, by the statute, to depend upon the result of the submission of the question to a popular vote, and its approval by a majority of the legal votes cast. But whether the statute in these particulars was complied with, was left to the decision of certain persons who held official relations with the municipality in whose behalf the proposed subscription was to be made. It was in reference to such a case that the court said: "When legislative authority has been given to a municipality, or to its officers, to subscribe to the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with, their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal." This doctrine was reaffirmed in *Buchanan* v. *Litchfield*, 102 U. S. 278, and in other cases, and we perceive no just ground to doubt its correctness, or to regard it as now open to question in this court.

But we are of opinion that the rule as thus stated does not support the position which counsel for plaintiff in error take in the present case. The adjudged cases, examined in the light of their special circumstances, show that the facts which a munic-

ipal corporation, issuing bonds in aid of the construction of a railroad, was not permitted, against a *bona fide* holder, to question, in face of a recital in the bonds of their existence, were those connected with or growing out of the discharge of the ordinary duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued ; not merely for themselves, as the ground of their own action, in issuing the bonds, but, equally, as authentic and final evidence of their existence, for the information and action of all others dealing with them in reference to it.   Such is not the case before us.   Had the statutes of Ohio conferred upon a township in Delaware County authority to make a subscription to the stock of this company, upon the approval of the voters at an election previously held, then a recital, by its proper officers, such as is found in the bonds in suit, would have estopped the township from proving that no election was in fact held, or that the election was not called and conducted in the mode prescribed by law ; for in such case it would be clear that the law had referred to the officers of the township, not only the ascertainment, but the decision of the facts involved in the mode of exercising the power granted.   But in this case, as we have seen, power in townships to subscribe did not come into existence, that is, did not exist, except where the county commissioners had not been authorized to make a subscription. Whether they had not been so authorized, that is, whether the question of subscription had or not been submitted to a county vote, or whether the county commissioners had failed for so long a time to take the sense of the people as to show that they had not, within the meaning of the law, been authorized to make a subscription, were matters with which the trustees of the township, in the discharge of their ordinary duties, had no official connection, and which the statute had not committed to their final determination.   Granting that the recital in the bonds that they were issued " in pursuance of the provisions of the several acts of the general assembly of Ohio," is equivalent to an express recital that the county commissioners had not been authorized by a vote of the county to subscribe to the stock c

this company, and that, consequently, the power conferred upon the township was brought into existence, still it is the recital of a fact arising out of the duties of county officers, and which the purchaser and all others must be presumed to know did not belong to the township to determine, so as to confer or create power which, under the law, did not exist. In the view we have taken of this case, *McClure* v. *Township of Oxford*, 94 U. S. 429, is instructive. That was a case of municipal subscription to a railroad corporation. The act conferring the authority provided that it should take effect (and, therefore, should not be a law except) from and after its publication in a particular newspaper. Thirty days' notice of the election was required. But the election was held within thirty days from the publication in the paper named in the act. The bonds recited that they were issued in pursuance of the statute, describing it by the date of its passage, not the date of its publication in the newspaper designated. They showed upon their face that the election was held April 8th, 1872. But the purchaser was held bound to know that the act was not in fact published in that newspaper until March 21st, 1872; that, therefore, it did not become a law until from and after that date. He was, consequently, charged with knowledge that the election was held upon insufficient notice. The bonds were, for these reasons, declared to be not binding upon any township. The publication of the act, plainly, was not a matter with which the township trustees, as such, had any official connection. It was not made their duty to have it published. The time of publication would not necessarily appear upon the township records; but publication in a named newspaper was, as the face of the act showed, vital, not simply to the exercise but to the very existence of the power to subscribe. We may repeat here what was said in *Anthony* v. *Jasper County* 101 U. S. 693, 697, that purchasers of municipal bonds "are charged with notice of the laws of the State, granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality the *bona fide* holder is protected against mere irregularities in the manner of its execution; but if there is a want of power no legal liability can be created." So here,

Porter Township is estopped by the recitals in the bonds from saying that no township election was held, or that it was not called and conducted in the particular mode required by law. But it not estopped to show that it was without legislative authority to order the election of August 30th, 1851, and to issue the bonds in suit. The question of legislative authority in a municipal corporation to issue bonds in aid of a railroad company cannot be concluded by mere recitals; but the power existing, the municipality may be estopped by recitals to prove irregularities in the exercise of that power; or, when the law prescribes conditions upon the exercise of the power granted, and commits to the officers of such municipality the determination of the question whether those conditions have been performed, the corporation will also be estopped by recitals which import such performance.

*The judgment is affirmed.*

Mr. Justice Matthews having been of counsel, did not sit in this case or participate in its decision.