PLANTERS' BANK OF CLARKSDALE *v.* YAZOO-COLDWATER DRAINAGE DIST.

(Division A. Jan. 27, 1930.)

[126 So. 9. No. 28317.]

Roberson & Cook, of Clarksdale, for appellant.

Shands, **Elmore** & **Causey**, of Cleveland, for appellee.

**McGowen, J.,** delivered the opinion of the court.

Appellant filed a petition in the chancery court of Tunica county, seeking a judgment against Kirby, Salmon & Abbey, liquidating commissioners of the Yazoo-Coldwater drainage district, seeking a judgment against said district for the principal sum of five thousand dollars, and praying that the said liquidating commissioners be required to levy and enforce the collection of a tax upon all the taxable property within the said drainage district in an amount sufficient to pay the indebtedness.

The petitioner attached, as an exhibit to the petition, five notes of like tenor and effect, each for the sum of one thousand dollars, dated September 15, 1921, and due April 1, 1923, payable to S. G. Salter or bearer, and signed by Yazoo-Coldwater drainage district, by W. A. Cox, president, attest S. Roy Crisler, secretary. The petition further alleged that Salter assigned said notes to the Planters' Bank prior to maturity, for good and valuable considerations, and that the bank had no notice of any equity existing between Salter and the drainage district, and that the bank was the holder in due course of said notes.

The appellee, the drainage district, by its answer denied that the Planters' Bank was a holder in due course; and in effect said that the bank had notice contained in the notes themselves of infirmities in the notes; that the notes had not been legally executed by the district, so as to bind the said district; that the notes, if legally executed, did not bind the district, for the reason that the contract upon which the notes were based was ultra vires; that the drainage district was without power to

delegate its functions to some other person or corpora-
tion.

Issue being joined, the case came on for trial, and the
petitioner, the appellant here, offered in evidence the
notes, together with the decree of the chancery court in
cause No. 1590, in the matter of the Yazoo-Coldwater
drainage district, to which the appellee, the drainage dis-
trict, objected, and moved to exclude the notice and the
decree of the chancery court, which was sustained by the
court; and there being no further evidence, the chancellor
entered his final decree dismissing the case, and from
this decree the appeal is prosecuted here.

Each of the notes payable to S. G. Salter or bearer
contained the following language: "This note is one of
a series of twelve notes of like kind, amount and char-
acter except as to number; and is issued as evidence of
indebtedness due for labor and services rendered. Ap-
proved by order of the chancery court on the 12th day
of September, 1921."

The decree mentioned in the notes apparently approved
a petition of the Yazoo-Coldwater drainage district, ask-
ing that it acquiesce in and approve the employment of
S. G. Salter to act for and on behalf of the drainage dis-
trict in attempting to have the Yazoo and Mississippi
levee board assume control of the waters of the Cold-
water river, and asking that the court approve the ex-
ecution of the notes to said Salter as compensation for
his services; and the said decree, so approving the action
of the drainage district, set forth in extenso a contract
which had been entered into by and between the drainage
district and Salter.

The pertinent part of the contract is in these words:
"The party of the first part (the drainage district) here-
in contracts with and employs the party of the second
part (Salter) to forthwith undertake to have the Yazoo-
Mississippi Delta Levee Board to assume control of the
Coldwater river either by diverting the waters thereof

or otherwise. The party of the second part (S. G. Salter) is authorized and directed to do any and all things necessary and which to him seems meet and proper for the accomplishment of the desired results.''

The employment was for a period of twelve months, unless sooner terminated by agreement, and for the services which we have set forth Salter was to receive twelve thousand dollars.

The chancery court, by its decree, approved the contract, authorized the president of the drainage district to sign the notes and have same attested by the secretary of the district, and authorized the execution of the notes, without affixing a seal thereto; the district never having adopted one.

It further appears from the pleadings that the liquidating commissioners were appointed by the chancery court, pursuant to chapter 256 of the Laws of 1924. It further appears that the drainage district here involved was organized pursuant to chapter 195 of the Laws of 1912, Hemingway's Code, 1927, sections 4946 to 5001, inclusive.

As we interpret the brief of appellant, he seems to recognize that the notes, as originally executed, were not enforceable, even though authorized to be executed by a decree of the chancery court; and relies upon two validating acts passed by the legislature, general in their nature, to uphold his contention that the lower court is in error, and that he is entitled to recover the notes because they have been twice validated by the legislature; that all infirmities which may have existed in the notes had been cured; and that the legislature may subsequently ratify and cure that which it could have authorized in the first instance.

The curative acts referred to are chapter 295 of the Laws of 1922, sections 7869 to 7871, inclusive, Hemingway's 1927 Code, and chapter 280 of the Laws of 1926, sections 7867, 7868, Hemingway's 1927 Code.

Chapter 195 of the Laws of 1912, as amended by chapter 269 of the Laws of 1914, is a drainage act, conferring

upon commissioners the power to drain lands in this state which are subject to overflow, for the purpose of promoting the public health, and for agricultural purposes. These commissioners are vested with the power to effectuate the purposes of the act, and are authorized to employ engineers to lay out the work, and contractors to construct levees and dig canals or ditches. They are authorized to issue bonds or other evidences of debt for the said purpose, and are required to levy an assessment of benefits, and a special assessment on the lands in accordance therewith, in order to pay the obligations of the district.

It is not contended in this cause that there had ever been any assessment of benefits, or of taxes with which to pay any indebtedness accruing at the instance of the commissioners; but, on the other hand, it appears from the petition that the petitioners are desirous now of having this assessment made, in order to pay this particular debt.

It is not controverted by counsel for appellant, in his brief, that the recitals in the notes which we have quoted, supra, referred the purchaser or holder subsequent thereto, of the notes, to the contract recited in the decree; and therefore the Planters' Bank had notice of the contents of the decree, and especially of the contract on which the notes are based.

Briefly stated, the notes were executed to Salter in consideration of his "using his influence" with the levee board, in order to induce the board to take over the control of the Coldwater river. This levee board was organized, as shown by its original charter, for the purpose of protecting the area of its district from loss of life and property to the citizens thereof, from sickness and suffering consequent upon any overflow of the waters of *the Mississippi river,* by erecting and maintaining efficient levees. See chapter 168 of the Laws of 1884. While the constitution of 1890 did not charter the levee district, it distinctly recognized the chapter to which we have

just referred as a part of the Constitution, as held by this court in the case of Ham v. Board of Levee Com'rs of Yazoo-Mississippi Delta, 83 Miss. 534, 35 So. 943.

Prior to this time the legislature has taken extreme pains to provide adequate state-wide drainage schemes, several in number, some of which were expressly adapted to what is known as the Mississippi Delta of this state, and has seen fit to create these drainage districts, notwithstanding the prior and continued existence of the levee board, whose duties were to fend against the overflow of the waters of the Mississippi river.

The validating act, chapter 295 of the Laws of 1922, sought to validate all bonds, notes, certificates, loan warrants, or other obligations of any county, road district, or subdivision or district thereof, or any municipality, or drainage district, which have been sold or contracted to be sold at not less than par and accrued interest.

Chapter 280 of the Laws of 1926 is practically the same, and we may say that it has the same legal effect, because the general law provides that no obligation of the state, or a division thereof, shall be sold for less than par and accrued interest.

To state the case is to decide it. Neither validating act contains any language which broadens the powers theretofore conferred upon the several subordinate subdivisions of the state, which had been theretofore granted the authority to create a debt against the municipal subdivision, including drainage districts of the state. They simply validated, in the manner prescribed by the act, those creations of debt which had not been created by the ultra vires act of the subdivision of the government referred to. It was quite beyond the power of a drainage district to employ a lobbyist to procure another division of the government to perform the functions for which it (the drainage district) had been created. Salter had notice of the decree of the chancery court containing the contract; likewise, his assignee, the Planters' Bank, had notice of the defense existing; so the bank is not a holder in due course, having notice that said district had ex-

ecuted these notes for a consideration which sought unlawfully to obtain that which, had Salter fulfilled his part of the contract, would have been quite beyond the power of the drainage district to perform, since it could not delegate the powers conferred upon it by the legislature. The function of the drainage district was to protect, if possible, the lands within the district from the overflow of the waters of the Coldwater river, and otherwise drain the lands of the district according to the terms of the acts, and it is idle to say that the drainage district could assume the functions of a lawmaker, and procure another subordinate arm of the government to discharge its functions, thereby to exercise *its* discretion, and to carry out *its main* object; and these drainage officers could not delegate their function and duties to some other body or officer, unless expressly authorized so to do; and there is no such authorization in either the original act to which we have referred, or in the validating acts. Being without power, there was no consideration for these notes, leaving aside the question of whether or not a drainage district could employ a lawyer to lobby with the levee board, and clothe it with the power to perform the functions of the drainage district, if they desired so to do. Delegata potestas non potest delegari. See State ex rel. Brown v. Sawmill Co., 119 Miss. 432, 81 So. 124; Miller v. Tucker, 142 Miss. 146, 105 So. 774; also, Anthony v. Jasper County, 101 U. S. 693, 697, 25 L. Ed. 1005, in which latter case, speaking with reference to purchasers of municipal bonds, it was said: They are "charged with notice of the laws of the state granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality, the bona-fide holder is protected against mere irregularities in the manner of its execution, but if there is a want of power, no legal liability can be created." Also, see Northern Nat. Bank of Tupelo v. Porter Township Trustees, 110 U. S. 608, 4 S. Ct. 254, 28 L. Ed. 258.

We do not here intend to hold that a drainage district may not, within its powers, issue a note or other evidence of indebtedness; and though the proceeding is irregular, the validation will make it regular and binding; but we do say that the validating act, which purports only to validate the acts of these subordinate arms of the government, does not extend the power of the drainage district to do that which was clearly outside its authority. For instance, the legislature did not validate by another of these acts the obligation of a drainage district creating an indebtedness, and issuing its certificate therefor, to pave the roads of its territory. See further on this question the case of Warner v. Martin, 11 How. 209, 13 L. Ed. 667.

Affirmed.