BISHOPRIC *et al. v.* CITY OF JACKSON *et al.*

ON SUGGESTION OF ERROR.

(In Banc.   February 14, 1944.)

[16 So. (2d) 776.   No. 35443.]

Harold Cox, of Jackson, and **Peck, Shaffer & Williams,** of Cincinnati, Ohio, for appellants.

722

W. E. Morse, of Jackson, for appellee.

**A. M. Nelson** and **Green & Green**, all of Jackson, for Mississippi Power & Light Company.

Harold Cox, of Jackson, and **Peck, Shaffer & Williams,** of Cincinnati, Ohio, for appellants, on suggestion of error.

726

728

**W. E. Morse,** of Jackson, for appellee, on suggestion of error.

730

A. M. Nelson and Green & Green, all of Jackson, for
Mississippi Power & Light Company, on suggestion of
error.

On Suggestion of Error.

**Anderson, J.,** delivered the opinion of the court on suggestion of error.

This cause is here on suggestion of error. The parties to this cause are: Appellants, the Mark Twain Oil Company, a partnership composed of the appellant Bishopric and others, and the appellees, the City of Jackson, the Mississippi Power & Light Company and others, whose names it is unnecessary to mention. The appellants will be referred to as the Mark Twain Company and the appellees as the City and the Power Company.

Sometime prior to 1940 the Power Company under a franchise from the City was furnishing its citizens with natural gas. There arose a controversy between them as to the rates that should be charged, which resulted in the City procuring the passage of Chapter 280, Laws of 1940, which follows: "Section 1. Be it enacted by the Legislature of the State of Mississippi, That municipalities of thirty-five thousand (35,000) inhabitants or over, according to the 1930 census, be and they are hereby authorized to operate gas systems, including gas distribution systems, and to that end said municipalities are authorized to drill or purchase a well, or wells, to supply said gas systems within the municipality, or within a radius of five (5) miles of said municipality, provided that the money used therefor is made available out of the gas system or some other public utility belonging to said municipality."

By authority of that statute the City acquired gas and oil leases in State lands and other lands and in conjunction with the Mark Twain Company drilled thereon four producing gas wells. The City assigned in writing to the Mark Twain Company a half interest in the venture. That Company and other parties to the suit, whose names it is useless to mention, contributed something over $20,000 money and services to the enterprise. The City decided that it was not practicable to carry out the purposes of that statute, and treating its contract with the Mark Twain Company as ultra vires and void filed its bill to have the court so declare. The ground of the City's case was that the statute violated Sections 87 and 88 of the Constitution prohibiting local legislation with reference to the matter. In the former opinion we so held, but in doing so overlooked Section 89 of the Constitution as construed in Haas v. Hancock County, 183 Miss. 365, 184 So. 812, and State v. Jackson, 119 Miss. 727, 81 So. 1. Section 89 provides, among other things, that each House of the Legislature shall have a standing committee on Local and Private Legislation, and that no local or private bills shall be passed by either House until referred to such Committee thereof and shall have been reported with a recommendation in writing that it do pass, stating affirmatively the reasons therefor. It was held in those cases that the presumption was conclusive that that provision of the Constitution had been complied with.

The City argues that nevertheless the decree appealed from should be affirmed because what took place between the parties under the statute violated Section 183 of the Constitution, and for the further reason that it amounted to a surrender by the City of part, at least, of its governmental powers. Section 183 of the Constitution provides, among other things, that no municipal corporation shall make an appropriation or loan its credit in aid of any corporation or association. We are of opinion that both of those grounds are well founded, and we reach that conclusion upon the following considerations: The City

entered into a written agreement with the Power Company for the purchase and distribution by the Power Company of the gas output from these wells, disregarding any claim whatever by the Mark Twain Company. The City offered to do equity by reimbursing the Mark Twain Company, and others engaged with it, for the money and value of the services they had contributed in developing the enterprise. The final decree ordered that to be done, fixing the amounts, which aggregated something over $20,000. The Mark Twain Company contends that the assignment by the City of half interest in the enterprise was legal, and further that the City is estopped from contending otherwise.

The contract between the parties provides that "the wells are to have supervision and the cost of the supervision to be paid jointly by us and the City of Jackson." The City agreed not only to put in all leases it might obtain from the State, but in addition the Water Works property, the land in Livingston Park, the Airport, or any other lands as it might own. And further if rentals are to be paid to the state the City agreed to pay them. And the City agreed to obtain from the State Mineral Lease Commission such additional lands as the Mark Twain Company might designate, which were available to the City. The assignment covers the gas rights in apparently about 1,000 acres of land and provides that the wells thereon shall be drilled jointly. In its answer and cross-bill Mark Twain Company prayed for specific performance and that the City might be required to assign to it a half interest in the gas rights in all other lands it might own and prayed for an accounting of the proceeds of all gas which had been produced with interest thereon "figured at a reasonable rate." At different times the City in order to aid the project necessarily made various appropriations out of public funds for that purpose.

Gas can not be divided. In its nature it must all start out in one pipe. To distribute it the streets and alleys

of the City must be used for laying pipes. By its very nature the business is continuing, requiring bookkeeping and accounting. The enterprise is necessarily extensive. Everything had to be done with the mutual consent of the parties. It is the duty of the Mayor and municipal authorities to furnish the gas to its inhabitants at as low rates as practicable. On the other hand, the interest of the Mark Twain Company is to get as much out of the inhabitants of the City as possible. By this contract the City authorities have handcuffed themselves in their duties to the inhabitants.

The latter part of Section 135, 37 Am. Jur. 751, is in this language: "It has also been held that where the municipal corporation may lawfully own and operate a public utility, it must be the sole proprietor of property in which it invests its public funds, and that it cannot unite its property with the property of individuals or corporations, so that, when united, both form one property." To support this text, among other cases referred to, is Ampt v. Cincinnati, 56 Ohio St. 47, 46 N. E. 69, 35 L. R. A. 737, which holds with the position of the City on both grounds, namely that the statute violates Section 183 of the Constitution and also that the contract surrenders part of its governmental powers to another corporation and therefore its action was ultra vires. Section 6, Article 8 of the Constitution of Ohio provides, among other things, that no county, municipality or township shall become a stockholder in any joint stock company, corporation or association whatever, "or to raise money for, or to loan its credit to, or in aid of, any such company, corporation or association." The digest to the case sufficiently shows what the court decided, which is as follows: "Under section 6 of article 8 of the constitution, a city is prohibited from raising money for, or loaning its credit to or in aid of, any company, corporation, or association; and thereby a city is prohibited from owning part of a property which is owned in part by another, so that the parts owned by both, when taken together,

constitute but one property. A city must be the sole proprietor of property in which it invests its public funds, and it cannot unite its property with the property of individuals or corporations, so that, when united, both together form one property. Section 8 of the Act of April 24, 1896, entitled 'An act to provide for water works purposes in cities of the first grade class' (92 Ohio Laws, p. 606), is unconstitutional, being in conflict with section 6 of article 8 of the constitution. The remainder of the act, not depending upon said section 8, is a valid statute.''

The construction of Section 183 of the Constitution was involved in Jackson Ry. Co. v. Adams, State Revenue Agent, 79 Miss. 408, 30 So. 694. The City of Jackson made an appropriation to the Railway Company, to aid it in furnishing street railway transportation in the City. The City was to have no control over the operations of the railway company. The court held that the appropriation violated that section of the Constitution. In Carothers v. Town of Booneville, 169 Miss. 511, 153 So. 670, although not exactly in point, is illustrative, our court again construed that provision of the Constitution. A statute authorizing the town to issue bonds payable from taxes, enabling the town to increase employment, and for that purpose build or lease a garment factory, was held to violate that section of the constitution; and, in addition, ''by denying due process.''

Clearly it appears that what took place between the Mark Twain Company and the City is ultra vires and void on both grounds. That means, of course, that the Mark Twain Company got nothing whatever by the assignment and transfer by the City of the half interest in the enterprise. The City was, therefore, left with the exclusive title to the property which it had the right to acquire and own. In that situation it was the duty of the City to the public to utilize the gas to the best advantage, which it did under the evidence in this case when it made the arrangement with the Power Company. Its act, therefore, in that respect was not ultra vires. The Mark Twain

Company argues that the City is estopped to make the defense of ultra vires because of what took place after the assignment to it, consisting of the drilling of the four wells and the expending of time and money in doing so. There is no merit in that position. An ultra vires contract made with the officers of a municipality does not estop the municipality, since all persons dealing with it are charged with knowledge of the law governing it and limiting the powers of its officers. Edwards Hotel, etc., Co., v. City of Jackson, 96 Miss. 547, 51 So. 802; American Oil Co. v. Marion County, 187 Miss. 148, 192 So. 296; Bank of Commerce v. City of Gulfport, 117 Miss. 591, 78 So. 519; 19 Am. Jur. (Estoppel) Sections 166-168.

There is no merit in the argument that the Mark Twain Company is entitled in addition to the return of the value of money, labor and material they put in the enterprise which was decreed by the court on the ground of doing equity, the value of a half interest in the yield of the wells. To so hold would mean that the contract and dealings thereunder between the Mark Twain Company and the City were valid up to the beginning of this cause and invalid afterwards. In other words, notwithstanding the action of the municipality was ultra vires from the beginning it would be valid up to the time the City filed its bill in this cause. Furthermore, it would be utterly impracticable, if not impossible, to put a value upon what Mark Twain Company would be entitled to under the contract if it were valid.

The decree of the chancellor requiring the City to reimburse the Mark Twain Company for its outlay in doing the work does not mean that the City was legally liable therefor, but instead that in equity it was not entitled to the relief prayed for without doing so. The application of that principle has nothing to do with whether the contract was ultra vires or not.

It is not advisable to go into the other questions involved in the case. The decree of the chancellor is so

manifestly correct that it would be of no interest to the Bench and Bar of the state.

The former opinion in this case is withdrawn.

Suggestion of error overruled.

SPEIALLY CONCURRING OPINION.

**Alexander** and **Roberds, JJ.** (specially concurring).

Justices Alexander and Roberds concur in the result reached in the opinion by Judge Anderson, but do not consider that it is necessary to pass upon the constitutionality of Chapter 280, Laws of 1940, nor to construe Section 183 of the Constitution of 1890 as applicable to the situation here.

We think this contract.is ultra vires and invalid because it was not authorized by, nor embraced within, said Chapter 280.

That special act confers upon said municipalities the power to "operate gas systems, including gas distribution systems, and to that *end* said municipalities are authorized to drill or purchase a well, or wells, to supply said gas systems within the municipality . . ." As stated in the main opinion, the contract in question and the rights of the parties thereunder are invisible and inseparable and must be exercised, if exercised at all, by mutual consent; thereby, by merely refusing it consent, the other party could prevent the municipality from performing its duty to the inhabitants thereof and from exercising its functions as contemplated by said Chapter 280. There would be no way to force the co-partner to agree. This litigation illustrates that situation; the parties are already in disagreement, with litigation resulting therefrom. This contractual relation is indefinite and there is no way to end it. The contract contains no expiration date. It might continue for many years. There is no way to terminate it judicially except as is here done in the main opinion. There can be no partition of the gas which may be produced thereunder. The other parties to it were charged with notice of the powers and

lack of powers of the municipality. It is being reimbursed, with interest, everything which it put into the venture. To pay them the value of what they supposedly acquired would be to validate the contract.

PARTIALLY DISSENTING OPINION.

**Smith, C. J.**, delivered a partially dissenting opinion.

No question of the violation of Section 183, or any other Section of the Constitution, here arises for two reasons: (a) Chapter 280, Laws of 1940, does not authorize municipalities to operate a gas distribution system in connection with an individual or corporation, each sharing in the management and profit or loss thereof; (b) the contracts by which the appellant acquired a half interest in these gas leases do not provide for the operation of a gas distribution system jointly, or as partners by the City and the appellant.

I am of the opinion, (1) that the City had the right to contract with the appellant to finance the drilling of these wells, for which the appellant was to receive a one-half interest therein, and to convey to the appellant a one-half interest in the leases on which the wells were drilled; (2) that under these contracts the City and the appellant each own a half interest in these gas leases and that the City was without the right to sell the output of the gas wells thereon and appropriate the money received therefor to its own use but should account to the appellant for the value of his interest therein, which the appellant by his cross-bill seeks to recover. The appellant and the City are tenants in common of these gas leases and if the City desires to operate the wells thereon exclusively for its own benefit and the appellant should refuse to sell his interest therein to the City, it, of course, has the right to have the leases on which the wells are situated sold for a partition of the proceeds of the sale.

Since three members of the court are of the opinion that these contracts were ultra vires and not binding on the City, the decree of the court below can not be reversed

on the ground I hereinabove set forth; that being true I concur in Judge McGehee's opinion as to what, in this aspect of the case, the decree of the court below should have been.

PARTIALLY DISSENTING OPINION.

**McGehee, J.,** delivered a partially dissenting opinion.

The principal question presented for decision in this case, which is unaffected by some of the conclusions of law set forth in the controlling opinions herein on suggestion of error, is whether or not the City of Jackson has offered to do that which, in equity and good conscience, is required to be done as a condition precedent to its alleged right to obtain from a court of equity the cancellation of the two assignments in controversy which were executed by the City in favor of the defendants for a one-half interest in four producing gas wells, which were located and brought into being mainly through the efforts of the assignees under such assignments, even if we were justified in holding that the municipal authorities were without power to execute the same.

The authority of the municipality to drill or purchase these gas wells for the purpose of supplying its inhabitants with gas is expressly conferred by Chapter 280, Laws of 1940, if the conditions set forth therein are complied with, and the constitutionality of which is being upheld by the vote of all of the judges in the decision now being rendered herein. Moreover, the general rule is that unless a statute contains some express or implied restraint, the municipality has a reasonable discretion in the choice of the means or methods for exercising the power given it for a public purpose. 19 R. C. L., p. 770; 43 C. J., p. 249; 1 McQuillin, Municipal Corp. (2 Ed.), pp. 964, 965.

If the municipality has the power to drill or purchase gas wells for the purpose authorized by said Chapter 280, Laws of 1940, supra, then it necessarily follows that

it has the right to cause such wells to be located and drilled by others experienced and skilled in the business of drilling gas wells. This being true, it also follows that the municipality in the exercise of the power conferred by this statute may either assume all the risk and procure the wells to be located and drilled at a fixed price or compensation for such services or cause a part of the risk to be assumed by others who are to give of their time, labor, and expense to the success of the project in consideration of an assignment of an interest in the wells if and when the production of gas is obtained, and with the right on the part of such municipality to then re-acquire such interest at fair value. Most assuredly, if it has the power to purchase a well or wells, as authorized by this statute, it would be authorized to acquire an outstanding one-half interest in them in order to carry out the purposes of this legislation. And, it is especially true that the municipality could have procured the drilling of these wells in consideration of the execution of the assignments involved, where the other contracting parties were to receive nothing for their time, labor, and expense in the event no production of gas was had. That which could have, therefore, been lawfully done—the reacquirement of the outstanding one-half interest assigned—equity will require an offer on the part of a complainant to do when seeking affirmative relief against this solemn agreement here under consideration, which may, in some respects, be ultra vires, before the court will lend its aid to an attempt by the municipality to appropriate and sell the entire output of the properties without doing what is right, just and equitable under the circumstances.

There is no difference of opinion among the judges on the proposition that the complainant is required to do equity as a condition precedent to obtaining the relief sought in this case, but we are not in accord as to what should be deemed just and equitable under the circumstances here involved. The municipality in asking a cancellation of the assignments on the ground that it

was without power to engage in a joint enterprise with the assignees for marketing the gas and dividing the profits of such a business undertaking, like unto a partnership venture—involving the sharing of a responsibility by its public officials with other persons in supplying gas to its inhabitants and requiring the consent of the assignees to the various steps necessary to be taken in the proper conduct of the business—has not offered either to account to the assignees for one-half of the proceeds derived from the sale of gas to the local public utility each month up to the date of the decree herein appealed from and pay the value of their one-half interest in the wells as to the time of rendition of such decree or the value thereof as of the date when the municipality took complete charge of the common property and began to appropriate the entire output of such wells to its own use. Nor has it asked that those wells which the municipality owns as a tenant in common with the assignees shall be sold for a partition of the proceeds in order that it may legally acquire such outstanding one-half interest so as to be able to sell such gas as its own property to the public utility now engaged in the distribution thereof to the public. And this is true notwithstanding the fact that the municipality is receiving and retaining a very considerable revenue each month from the sale of the gas, under the claim of sole ownership thereof, contrary to the doctrine against the allowance of an unjust enrichment under such circumstances.

It may be conceded, for the purpose of this decision, that after the defendants, as assignees under the assignment, had acquired a one-half interest in the four producing wells in consideration of the risk assumed and the time, labor, and money expended both in locating and drilling the same, the municipal authorities were without power to engage in the alleged partnership relation that would be involved in the business venture of marketing the gas and dividing the proceeds derived from these properties. But such fact would only relieve the munici-

pality from the performance of the ultra vires acts contemplated in such an undertaking, and would not entitle it to take over the complete control of the property and appropriate the fruits of its bargain to its own use in the manner shown in this case without any offer on its part to do equity in the premises. "It is one of the oldest of equity principles, that when a party seeks the interposition and aid of a court of chancery as against his adversary, the court in extending its aid will require as a condition thereof that the complaining party shall accord and render unto the adversary party all the equitable rights to which the latter is entitled in respect directly to the subject matter of that suit, and this is true even as to many of those things which the defendant could not compel by an independent suit" (Griffith Chan. Prac. Sec. 43, p. 46), wherein the maxim, "He who seeks equity must do equity," is discussed. Again, it was said in this text, Section 522, that if a party shall "seek to set aside or cancel any contract or other transaction, or to restrain any proceedings thereunder, he shall not have relief unless he restore to the defendant the fruits that have been gathered by complainant from that transaction; and ordinarily this is true even if the transaction be illegal."

It cannot be said that the municipality could have thought that a proposal in the outset of its negotiations with the defendants could be deemed just and equitable that involved the suggestion that the wells be located and drilled with the understanding that in the event gas was produced in commercial quantities the latter should receive a bare reimbursement for their time, labor, and expense, and that, on the other hand, they should receive nothing. Yet, the municipality now insists that equity requires the doing of just that thing as the full measure of the rights of the defendants, and that only. The contrary principle was announced in 14a C. J. 586, Sec. 2529, when it was stated: "So where an equity court sets aside as ultra vires a railroad construction contract, it does so on the principle of compelling the corporation to account for

what it has received in partial performance, not on the basis of a bare reimbursement, but on a fair compensation, such as any other railroad contractor would receive under similar contract, if it were within the power of the corporation to make.'' See also 9 C. J. S., Corporations, Sec. 976.

Because of the alleged unconstitutionality of said Chapter 280, Laws of 1940, supra, the municipality contends that it was without authority, in the first instance, to drill the wells or cause the same to be drilled, and that, therefore, the assignments of a one-half interest therein to the appellants is ultra vires and void, as well as the undertaking on the part of the municipality to contract with the assignees for the future conduct of the business of marketing the gas and dividing the profits between the municipality and the said assignees. But I am of the opinion that, without regard to whether or not the municipality has the right to go forward with the performance of the alleged partnership relation for the marketing of gas and dividing the profits of such an undertaking, it was, nevertheless, vested with full power and authority —since we are holding the act in question to be constitutional—to procure the drilling of the gas wells here involved, and to convey or assign a one-half interest therein in payment for the services rendered by the assignees in locating and drilling the same.

The court below in requiring the complainant municipality to refund to the defendants only the actual expenses incurred for the labor expended and the equipment furnished, did not require the doing of complete equity between the parties. The decree in that behalf utterly ignores the risk taken by the defendants of receiving nothing for their time, labor, and expense in the production of gas if no gas had been obtained in this field where the gas supply was then thought to be practically exhausted. In other words, that which is sought to be done here by the municipality brings to mind the story of the white man and the Indian, who, during the pioneer days,

had gone hunting together and killed four wild turkeys and one crow. When the time came for a division of the game, the white man proposed to the Indian: "Now, I will take the turkeys and you take the crow, or you take the crow and I will take the turkeys." And thus it was that there came into use the saying, "He never did say turkey to me."

Neither the state nor any of its governmental subdivisions can either afford or be permitted in a court of equity to do less than full and complete justice in its dealings with the citizen in regard to the fruits of its ultra vires contracts thus solemnly and freely entered into. If it be said that the defendants entered into the undertaking here involved at a time when they were charged with knowledge under the law as to the extent of the power and authority vested in the officials of the municipality, then it is also true that the municipality was charged with knowledge of such extent and limitations of its authority in the premises, and, as a matter of fact, was in better position to be familiar with the limitations of its power in the instant case than were the defendants who were residents of a distant state.

There are other rights claimed on behalf of the appellants which, in my opinion, they are entitled to assert in this proceeding, such as the reformation of the assignments so as to include all the wells located and drilled and intended to be embraced therein; but it is unnecessary to discuss that feature of the case since the decree of the court below is being in all respects affirmed anyway by the controlling opinion herein.

From the foregoing views, it follows that I am of the opinion that the bill of complaint should have been dismissed unless it was amended so as to contain an offer to do full and complete equity in accordance with the views hereinbefore expressed, and that thereupon the cross-complainants should have been granted such relief as in law and equity they were entitled to have and receive.

**Griffith, J.**, and **Smith, C. J.**, concur in this opinion.