Eden Drainage District *v.* Swaim, et al.

Division B. Oct. 22, 1951.

No. 38068 (54 So. (2d) 547)

Barnett, Jones & Montgomery, for appellant.

**Bridgforth & Love,** for appellees.

392

Barnett, Jones & Montgomery, in reply.

### Ethridge, C.

This case involves a question of whether a drainage district with local commissioners has the power to buy an undivided interest in lands from private individuals, not for drainage purposes, and thereby to assume the correlative rights and duties of a cotenant. The matter is here from a decree overruling appellant's demurrer

to cross-bill and motion to strike the answer of appellees. ██ Hence appellant admits all material facts well pleaded by appellees, so the averments of the pleadings will be outlined in some detail. Griffith, Miss. Chancery Practice (2d ed. 1951), Secs. 288, 367.

The Eden Drainage District of Yazoo County, Mississippi, appellant, filed a bill of complaint in the Chancery Court of Yazoo County against Mary Francis Swaim and several other defendants, appellees. It charged that it was the owner of 960 described acres of land in Yazoo County; that the lands were validly sold on April 5, 1943 to the State for delinquent ad valorem property taxes, and that the District purchased the same from the State by a forfeited tax patent on October 15, 1946; that on December 11, 1946, the District obtained a chancery decree confirming its patent against the State; and that the defendants claimed some unknown interest in the lands. The complaint asked that the District's title be confirmed and quieted against the defendants, appellees herein.

Defendants answered and claimed that they were vested with title to a one-half interest in the lands. They admitted that the lands were legally sold to the State for delinquent taxes on April 5, 1943, and asserted that at that time they owned a one-half interest; that on July 18, 1944, prior to the expiration of the two-year period of redemption, the predecessors in title of D. H. Dew conveyed to him a one-half interest in the lands, and that on October 7, 1944, Dew, for a valuable consideration, conveyed to the District his one-half interest in the 960 acres. Defendants charged that as a result of the deed from Dew to the District, the District became a cotenant with defendants in the land, and that when the District obtained its patent from the State, it redeemed the property as a cotenant, and title to one-half of the lands thereby revested in the defendants. The answer averred that the District's application for patent failed to show that the District was a former owner of an interest in

the land, and that the District paid for the patent $2,565.05, of which $2,362.15 was refunded to the District by the State Treasurer as its lawful share of the delinquent taxes. Defendants stated that they were ready and willing to pay their one-half of the purchase price paid to the State by the District.

The answer further charged that sometime in the year 1944, the District contracted and conspired with Dew for the cutting of all merchantable timber upon the lands, under which contract the District would receive from Dew $5 for each one thousand board feet of timber cut; that at or about the time of that contract, the District accepted delivery of the deed from Dew, dated October 7, 1944; that despite the District's knowledge that Dew owned an undivided one-half interest only and that was all the District had obtained, the District wrongfully secured the services of Dew in cutting the timber from the land and fraudulently appropriating to the District the sum paid to it by Dew for the timber. The answer averred that the District, in furtherance of this fraudulent plan to appropriate defendants' properties and to secure title to the lands, patented the lands from the State, and that the District paid to the State, for the patent, funds secured through its wrongful and fraudulent contract with Dew; that the application for the patent described the lands as ''cut-over'' lands but failed to show that the District had wrongfully cut over the lands prior to the expiration of the two-year period of redemption. The answer denied that the District obtained any rights to the defendants' one-half interest. In a cross-bill, the defendants and cross-complainants adopted the allegations of the answer, offered to pay their one-half of the costs of the patent and of the taxes subsequent to the date of the patent, asked the Court to adjudicate that the District held the title to one-half of the lands as trustee for the cross-complainants, and to require the District to execute the trust by deeding such interest to them,

and to account for funds paid by Dew to the District for the timber which had been cut.

The District made a motion to strike the answer, and filed a general demurrer to the cross-bill. The motion and demurrer were overruled, and from that action of the chancery court, the District takes this appeal.

Appellant is a drainage district with local commissioners, organized under the provisions of Chapter 195, Miss. Laws of 1912, as amended, Miss. Code of 1942, Secs. 4674-4755. The question is whether the District under these facts had the power to buy the deed from Dew, dated October 7, 1944; and thereby to become a tenant in common with the appellees. If this power existed, then when the District bought a forfeited tax land patent from the State to the lands, it held in trust for its cotenants, the appellees, their undivided one-half interest. Cohea v. Hemmingway, 1893, 71 Miss. 22, 14 So. 734. On the other hand, if the District had no power to buy a one-half interest in these lands from Dew and to assume the obligations of a cotenant, then that deed was void and its purchase of the lands from the State, expressly authorized by Code Sec. 4085, vested the entire title in the District, and appellees have no claims to the land under the facts alleged in the answer and cross-bill.

██ A drainage district with local commissioners, such as appellant, is a subdivision of the State government with limited jurisdiction and powers. It has only such powers as are expressly granted to it by statute or as may be necessarily implied from such legislation. Moorhead Drainage District v. Pedigo, 1950, 210 Miss. 284, 49 So. (2d) 378; Stephens v. Beaver Dam Drainage District, 1920, 123 Miss. 884, 86 So. 641; 28 C. J. S., Drains, Sec. 12.

Appellant is given the power by statute to buy lands within the District at tax sales, Sec. 4714; to buy lands within the District by forfeited tax land patent from the State, Sec. 4085; and to buy ''in fee simple, within

the confines of such district, all necessary rights of way for floodways, by-passes, ditches, canals, levees, and other necessary work or improvements, by purchase or condemnation * * *'', Secs. 4741, 4742, 4694, 4652-4656, 4690-4694. The District has the power ''to contract and be contracted with, to sue and be sued, to plead and be impleaded, and to do and perform in the name of such district all such acts and things for the accomplishment of the purpose for which it was organized.'' Code Sec. 4676. Under Sec. 4681, the District ''may do all acts and things not inconsistent with this article and with the laws of the state, and proper to effect the purpose and objects of this article.'' The supplementary power provisions of Secs. 4676 and 4681 do not grant new or additional powers to the District, but authorize only those which are necessarily supplemental to the powers expressly granted it.

Hence the District is expressly given the power to buy lands within the district (a) at tax sales, (b) by forfeited tax land patent from the State, and (c) for ''necessary rights of way for floodways, by-passes, ditches, canals, levees, and other necessary work or improvements'' within the District. Code Secs. 4741, 4690, 4692, 4694. The answer and cross-bill do not charge affirmatively that the District bought the one-half interest in 960 acres from Dew for any of the drainage purposes stated in (c) above. Appellees do not affirmatively argue in their brief that the lands so purchased here were for such necessary drainage purposes. Although for purposes of a motion to strike the answer and a general demurrer to cross-bill we must assume that facts well pleaded are true, the answer and cross-bill do not bring the District's purchase of these 960 acres from Dew within the express or necessarily implied powers of the District to buy lands for drainage purposes. With an agency of the State of limited jurisdiction, that must be affirmatively charged or shown, and appellees do not do that. Moreover, the argument in their brief seems to be

on the assumption that the Dew deed was not for such purposes. Hence the pleadings do not reflect that the deed was for authorized drainage purposes. And we do not think that there is any basis for necessary implication of a power to buy lands for additional reasons.

 In answer to the argument of appellant that the act of the District in buying an undivided one-half interest from Dew was ultra vires, appellees say that the purchase was voidable and not void, and that only the State itself can raise the issue of ultra vires. However, the District is a subdivision of the State government and under established precedents is entitled to raise that issue as a representative of the State. Bishopric v. City of Jackson, 1943, 196 Miss. 720, 737, 16 So. (2d) 776. See Whitworth v. Miss. State Highway Commission, 1948, 203 Miss. 94, 108, 33 So. (2d) 612.

 The District had no expressly granted power to buy an undivided interest in these lands from Dew, and we do not think that the power should be implied. On the contrary, the nature of the obligations assumed by a tenant in common tends to negative such an implication as being contrary to the nature, statutory functions and purposes of such districts. Under the rules governing tenancies in common, each cotenant is under a duty to pay taxes upon the land, and is entitled to the possession, use and occupancy, and to share jointly rents and profits accruing from the land. Clausell v. Riley, 1940, 188 Miss. 647, 196 So. 245. Tenants in common may be required to bear their proportionate share of expenditures and disbursements and to pay off proportionately the purchase price for outstanding titles and claims. Nowhere in the statutes exists a power in the District to spend funds to meet these obligations as a tenant in common with others. See 14 Am. Jur., Cotenancy, Secs. 23-80; 13 Miss. Digest, Tenancy in Common, 10-38 (Mutual rights and duties of cotenants). To support their argument that a drainage district can act as a tenant in common, appellees cite only DeWitt

v. City of San Francisco, 1852, 2 Cal. 289, which approved a municipality buying an undivided interest in a building for a city hall.

More persuasive on the issue is Bishopric v. City of Jackson, 1944, 196 Miss. 720, 16 So. (2d) 776, certiorari denied, 323 U. S. 725, 65 S. Ct. 57, 89 L. Ed. 582. In 1940 the State Legislature passed a statute authorizing Jackson to operate gas systems and to drill or purchase gas wells to supply the municipality's gas system, with certain restrictions. The city acquired gas leases on state lands and executed a contract with the Mark Twain Oil Company whereby the city would drill four producing gas wells on the lands. The city assigned to the company a one-half interest in the gas rights, and the company contributed over $20,000 of money and services to the enterprise. The company drilled jointly with the city four producing wells, and the company expended time and money under the contract.

The city later filed its bill to have this contract with the company declared ultra vires and void, and a chancery decree so adjudicating was affirmed. The opinion of Judge Anderson was based upon two reasons. Miss. Constitution, Sec. 183, provides that no municipal corporation shall make an appropriation or loan its credit in aid of any corporation, and the court thought that this contract violated that provision. The prohibitions of that section apply to a "county, city, town, or other municipal corporation." It is not necessary for us to decide whether this section is applicable to a drainage district, but certainly its purpose and policy is that of the State, and would tend to negative the implication of such a power by a drainage district. The Court also held that the contract amounted to a surrender by the city of part, at least, of its governmental powers; that a municipality should be the sole proprietor of property in which it invests its public funds, and should not own part of a property which is owned in part by another. It will be noted that the contract not only provided for a

joint enterprise, but that the City also conveyed to the company a one-half interest in all of the gas rights of the city. It was held that the entire transaction was ultra vires and void, that the Mark Twain Company got nothing whatever in the assignment and transfer by the city of a one-half interest in the gas rights and in the enterprise, and that the city was, therefore, left with the exclusive title to the property which it had the right to acquire and own.

The specially concurring opinion of Judges Alexander and Roberds was limited to a lack of statutory power in the city. They said: "As stated in the main opinion, the contract in question and the rights of the parties thereunder are indivisible and inseparable and must be exercised, if exercised at all, by mutual consent; thereby, by merely refusing it consent, the other party could prevent the municipality from performing its duty to the inhabitants thereof and from exercising its functions as contemplated by said Chapter 280. There would be no way to force the co-partner to agree. This litigation illustrates that situation; the parties are already in disagreement, with litigation resulting therefrom. This contractual relation is indefinite and there is no way to end it. The contract contains no expiration date. It might continue for many years. There is no way to terminate it judicially except as is here done in the main opinion. There can be no partition of the gas which may be produced thereunder. The other parties to it were charged with notice of the powers and lack of powers of the municipality." [196 Miss. 720, 16 So. (2d) 779.]

The distinction that the city was conveying rather than purchasing does not affect the applicability of the Bishopric case and its reasoning to the present question. For similar reasons, in addition to those outlined above with reference to the District's statutory limitations and respective rights and duties of cotenant, we hold that the deed from Dew to the District on October 7, 1944,

was ultra vires and void, and conveyed no interest in the lands to the District.

 Whatever right of action appellees might have had for the conversion of the timber from the lands by the District and Dew in 1944, after the tax sale and before the expiration of the two-year period of redemption, was waived by them by their failure to redeem the lands from the tax sale, and their rights in the land and its timber were extinguished by the expiration of the redemption period and the vesting of a full title in the State. Under Code Sec. 9936, the State alone, if anyone, has an action against the District for conversion of the timber. Whether that action exists and whether the decree of December 11, 1946 confirming the validity of the patent to the District as against the State precludes it is not here involved or decided. The case is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the judgment of the court below is reversed and remanded.

ON SUGGESTION OF ERROR.

### Alexander, J.

It is contended that this Court was in error in allowing the appeal to go off on the invalidity of the deed to the District by Dew. It is argued that only the State can raise the point that acquisition of this deed was ultra vires. It is asserted that we have by implication overruled Quitman County v. Stritze, 69 Miss. 460, 70 Miss. 320, 13 So. 35. This was not the intent or effect of our decision. In this cited case it was held that a private citizen could not raise the issue of ultra vires. So also is

the holding in Jefferson County v. Grafton, 74 Miss. 435, 21 So. 247, 36 L. R. A. 798. In the latter case, as in Bishopric v. City of Jackson, 196 Miss. 720, 16 So. (2d) 776, the point was raised by a political subdivision of the State. In Whitworth v. Miss. State Highway Commission, 203 Miss. 94, 33 So. (2d) 612, 614, the issue was raised against the State Highway Commission, yet the procedure was sanctioned since "by its bill to remove clouds, it (the Commission) raised the point."

The appeal was in the main directed to the establishment of a status of cotenancy between the District and Dew, whereby the subsequent purchase of a forfeited tax patent by the District inured to the benefit of the appellees as such cotenants. The reply by the District contested such status on the ground that it was without power to acquire the property under the deed from Dew. The State or a political subdivision can assert ultra vires offensively or defensively in a suit affecting its title or authority. See Planters Bank v. Yazoo-Coldwater Drainage District, 156 Miss. 297, 126 So. 9; Lee County v. James, 178 Miss. 554, 174 So. 76; Simpson County v. Floyd, 192 Miss. 501, 6 So. (2d) 580; American Oil Co. v. Marion County, 187 Miss. 148, 192 So. 296. Here the attack was not by private citizens. Appellees were seeking to uphold the deed from Dew; the district was defending upon the ground of ultra vires. The attack is not collateral. It arises out of the issues raised in the case itself. Whitworth v. Miss. State Highway Commission, supra; Reger v. Reger, 316 Mo. 1310, 293 S. W. 414, 421; Edward Thompson Co. v. Thomas, 60 App. D. C. 118, 49 F. (2d) 500; Sutherland v. Rasnake, 169 Va. 257, 192 S. E. 695, 698.

Suggestion of error overruled.

Hall, J., took no part in this decision.